[No. 11492.  Department Two. — September 22, 1886.]

# T. P. HEATH, APPELLANT, v. M. T. WALLACE, RESPONDENT.

PUBLIC LANDS — SWAMP AND OVERFLOWED — APPROVED PLAT OF TOWNSHIP SURVEY — REPRESENTATION OF LAND AS SUBJECT TO PERIODICAL OVERFLOW. — A representation on the approved plat of a township survey that certain lands embraced therein are subject to periodical overflow is not equivalent to a representation that the land is swamp and overflowed, within the meaning of section 4 of the act of Congress of July 23, 1866, or of section 2488 of the United States Revised Statutes.

ID. — SURVEY BY COUNTY SURVEYOR — APPROVAL BY STATE SURVEYOR-GENERAL — SEGREGATION MAPS AND SURVEYS. — The land in controversy was surveyed by the county surveyor of San Joaquin County, upon an application to purchase, made by the assignor of the plaintiff. The surveyor made a plat and field-notes of the land, in accordance with the United States survey of the township, section, and quarter-section, described the land as swamp and overflowed, and containing 160 acres, and returned the plat and field-notes to the state surveyor-general, who received and filed the same in his office on the 22d of October, 1865, and approved them on the 23d of November, 1865. *Held*, that the plats and surveys were not the segregation maps and surveys referred to in section 4 of the act of Congress of July 23, 1866, and in section 2488 of the United States Revised Statutes, and did not vest the title of the United States to the land in the State.

APPEAL from a judgment of the Superior Court of San Joaquin County.

The facts are-stated in the opinion of the court.

*John B. Hall,* for Appellant.

*W. L. Dudley,* for Respondent.

THORNTON, J. — This is an action to recover possession of the northwest quarter of section 23, in township 3 north, range 7 east, Mount Diablo meridian. Judgment was rendered for the defendant, from which plaintiff appealed to this court.

The questions to be decided here arise on the findings of fact which are here inserted, and are as follows: —

1. The United States subdivisional survey of town-

ship three (3) north, of range seven (7) east, Mount Diablo base and meridian, was made by Deputy United States Surveyor John Wallace in the year 1865, and said survey with the field-notes and plat thereof were duly approved, and the approval certified by the United States surveyor-general for the state of California on the twenty-third day of August, A. D. 1865.

The said approved official plat of said survey was filed in the United States land-office of the Stockton land district on the eighteenth day of October, A. D. 1865; a duly certified copy of the field and descriptive notes of the said survey was filed in the said Stockton office on or about June 17, A. D. 1881.

The land in suit is a part of said township three (3), and is within the limits of said Stockton land district.

2. The said approved and certified plat upon its face exhibits a compact body of land consisting of the following sections and subdivisions of sections, to wit:—

All of section number 23;

All of section number 26;

All of section number 33;

The south half and the northwest quarter of section number 25;

The north half of section number 35;

The north half and the southwest quarter of section number 34;

The south half and the northeast quarter of section number 27;

The south half of section number 28;

The southeast quarter of section number 32.

All that part of said plat which includes the foregoing sections and subdivisions of sections is colored blue (and by this color is distinguished from all other parts of the plat), and thereon is written the words: "Land subject to periodical overflow."

Of the field-notes aforesaid are the following:—

North between sections 22 and 23, var. 15° 24′ east.

Chains 6.20, middle of slough, 30 links wide, course west.

Chains 18.20, middle of slough, 50 links wide, 30 course west.

Chains 30.50, middle of slough, 80 links wide, course west.

Chains 39.27, fence, course east and west.

Chains 40, set posts for corner to sections 14, 15, 22, and 23. Land level and first-rate, subject to overflow from slough.

East on a random line between sections 23 and 26, closing with corner sections 22, 23, 26, 27. Land level, first-rate, subject to overflow.

North between sections 23, 24, var. 13° 24'.

Chains 40, set post for quarter-section corner in mound, trench and pits.

Chains 41.20, middle of slough, 50 links wide, course west.

Chains 78.20, middle of slough, 50 links wide, course northwest.

Chains 80, set post for corner to sections 13, 14, 23, 24.

Made mounds, dug pits. Land level, first-rate, subject to overflow from slough.

3. That in and by the said descriptive and field notes the said body of land (colored blue and marked "Land subject to periodical overflow") is represented to be subject to inundation by the overflow of the Calaveras River and its branches, and is thus rendered incapable of being cultivated for the raising of crops, except by means of banks and levees which have been erected to prevent the overflow of the water during the winter and spring months.

4. That in the month of April, 1865, one H. T. Hartwell made application, under and in accordance with the provisions of the act of the legislature of California of April 27, 1863, concerning state lands, to purchase the said northwest quarter of section twenty-three (23) from

the state as being swamp and overflowed land belonging to the state; and on the twenty-eighth day of said April, the county surveyor, Smith, of the county of San Joaquin, wherein the said land lies, made a survey, and recorded in his office a plat and field-notes thereof, in accordance with the said act of the legislature and the instructions of the state surveyor-general.

It is shown by the said plat and field-notes of the county surveyor that the survey of the said northwest quarter was and is in accordance with the United States survey of said township, section, and quarter-section; and that the said northwest quarter is thereon (the plat and field-notes of said county surveyor) described as swamp and overflowed land, and containing 160 acres.

The county surveyor certified and reported to the state surveyor-general the said plat and field-notes, and the same were received and filed in the office of the state surveyor-general on the twenty-second day of October, A. D. 1865, and on the twenty-third day of November, A. D. 1865, the said survey and plat and field-notes thereof were duly approved of record by said state surveyor-general.

5. That in the month of April, 1869, the said Hartwell made application under and in accordance with the provisions of the act of the legislature of California of March 28, 1868, concerning state lands, to purchase the said northwest quarter of section twenty-three (23) from the state, as being of the swamp and overflowed lands belonging to the state, and on the twenty-eighth day of April, 1869, the county surveyor, John Wallace, of the county of San Joaquin, made a survey, and recorded in his office a plat and field-notes thereof, in accordance with the said act of March 28, 1868, and the instructions of the state surveyor-general.

It is shown by the said plat and field-notes of County Surveyor Wallace that his survey of the said northwest quarter was and is in accordance with the United States

survey of said township, section, and quarter-section; and the said northwest quarter is thereon (the plat and field-notes of said County Surveyor Wallace) described as swamp and overflowed land, and containing 160 acres.

Said County Surveyor Wallace certified and reported to the state surveyor-general the said plat and field-notes, and the same were received and filed in the office of the state surveyor-general on the fourth day of May, A. D. 1869, and the said survey, and the plat and field-notes thereof, were duly approved of record by the said state surveyor-general on the twelfth day of November, A. D. 1869.  .

6. On the nineteenth day of April, 1870, the state of California issued and delivered to the said Hartwell a certificate of purchase of and for the land in suit, founded upon the said last-named application and approved survey.

This certificate sets forth that Hartwell had made part payment of the purchase price, and was the purchaser of the land, and that on making full payment, and surrendering the certificate he should receive the patent of the state for the same.

On the first day of April, 1871, this certificate was sold, and assigned in writing, and delivered by Hartwell to the plaintiff, T. P. Heath.

7. That on the twenty-first day of July, A. D. 1876, a patent was issued and delivered by the state to said Heath as assignee of the certificate for the said land in suit.

This patent is signed, attested, and countersigned by the governor, secretary of state, and register of the state land-office, with the seal of the state thereto affixed; and it sets forth that the land is swamp and overflowed, and had been duly and properly surveyed in accordance with law; that full payment had been made to the state for the land; that all the requirements of the act of Congress as well as the acts of the state legislature in re-

lation to swamp and overflowed lands had been complied with, and that the governor of the state, by virtue of authority in him vested, thereby granted, bargained, sold, and conveyed unto T. P. Heath, his heirs and assigns forever, the said tract of land, with the appurtenances thereto belonging.

8. That on the 10th of January, A. D. 1866, the said Hartwell filed in the said land-office at Stockton a pre-emptor's declaratory statement for the said northwest quarter of section 23, alleging settlement thereon September 20, 1862; and on the twenty-ninth day of October, A. D. 1873, the said Hartwell filed in said office a written abandonment of said pre-emption claim and filing.

On the eighth day of December, A. D. 1873, the said declaratory statement was canceled on the records of said land-office by order of the commissioner of the general land-office of the United States.

9. That the land in suit (northwest quarter of section 23, township 3 north, range 7 east, Mount Diablo meridian) has always been within the boundaries and has formed a part of the United States land district called the Stockton land district.

Except the said declaratory statement of the said Hartwell of January 10, 1866, no claim, filing, or entry to or upon the said land in suit for pre-emption, homestead, or other purposes under the laws of the United States was presented or made of record until the twenty-fourth day of July, 1876.

That on the twenty-fourth day of July, 1876, the defendant, M. T. Wallace, presented to United States Register Cottle, at the Stockton land-office, an instrument partly in writing and partly printed, called a declaratory statement, with the name of said Wallace thereto subscribed.

This statement set forth that said Wallace was a native citizen of the United States, and a married man over the

age of twenty-one years; and that on the twenty-fifth day of April, 1876, he settled and improved the said northwest quarter of section 23, and that he intended to claim said tract of land as a pre-emption right under the provisions of the act of Congress, approved September 4, 1841, and under the act approved March 3, 1853, entitled "An act to provide for the survey of public lands in California, granting of pre-emption rights therein, and for other purposes."

That said Register Cottle received the said statement, but refused to file the same; and thereon indorsed that he rejected the said written application for the reason that the official plat on file in his office showed said land to have been returned as subject to periodical overflow.

11. That the said Wallace appealed from the said decision of the Stockton land register to the commissioner of the general land-office; and on the fifth day of September, 1876, the register and receiver of the Stockton land-office were by a letter of the commissioner informed that the northwest quarter of section 23 is claimed by the state under the first section of the act of July 23, 1866, as having been sold in good faith as swamp land prior to that date, and directing the said officers to give notice to the state authorities, to the said Wallace, and all other parties in interest, and hold an investigation to determine said claim of the state.

12. That on the eighth day of February, 1877, the register and receiver, after having held the said investigation, decided that the state had no valid claim to said land under the first section of the said act of July 23, 1866; which said decision was subsequently, to wit, on the nineteenth day of May, 1877, affirmed by the commissioner.

13. That in and by the same decision of the commissioner of May 19, 1877, it was adjudged and determined that the state was not entitled to show the character of the said land as swamp and overflowed under the fourth

clause of the fourth section of the said act of July 23, 1866.

That the state took an appeal from the last aforesaid judgment of the commissioner to the Secretary of the Interior, who on the twenty-eighth day of December, 1877, overruled the commissioner in this behalf, and directed a hearing to be given to the state on the question of the character of the land by virtue of the said fourth clause of the fourth section.

14. That pursuant to said order of the secretary, and after notice to the state and all parties in interest, the United States surveyor-general held an investigation as to the character of the land, and thereafter it was decided by the said surveyor-general that the land was not in fact swamp and overflowed land on the twenty-eighth day of September, 1850, and thereafter said decision was affirmed by the Secretary of the Interior on the twenty-fifth day of February, 1881; and it was further then adjudged by the secretary that the said tract was subject to disposal under the pre-emption laws, and that Wallace be allowed to perfect his pre-emption claim thereto by entry and patent.

15. That after the last-stated decision of the Secretary of the Interior, to wit, on or about the month of November, 1881, the said Wallace filed his declaratory statement, and made proof and payment for said tract under the pre-emption laws.

16. That in the month of June, 1882, a patent of the United States founded on the said entry was issued and delivered to the said Wallace for the said tract.

17. That after the issuance of the patent to said Wallace, the state of California applied to the land department of the United States, claiming that the state was entitled in respect to said tract to the benefit of the first and second clauses of section four (4) of the said act of July 23, 1866, and the provisions also of section 2479 and the first and second clauses of section 2488 of the Revised

Statutes of the United States, and that said land be accordingly certified over to the state, because the said land, before the act of July 23, 1866, had been segregated and represented by the township survey, field-notes, and plat of the United States as swamp and overflowed, and had been segregated also by the state as swamp and overflowed by several surveys—conforming to the United States system of surveys—made before the passage of said act of July 23, 1866, and of said provisions of the Revised Statutes, and before the settlement of said Wallace.

18. That on the twenty-sixth day of April, 1883, the commissioner of the general land-office refused to consider the said application, and dismissed the same on the sole ground that the patent of the United States having already issued for the said tract to said Wallace, the department had no authority or jurisdiction of the subject of said application of the state; and March 3, 1884, the Secretary of the Interior affirmed this decision of the commissioner upon the same ground, and no other.

19. The plaintiff was not the owner of the tract of land in suit on the first day of September, A. D. 1876, and was not entitled to the possession thereof, and was not the owner or so entitled when this action was commenced.

20. The defendant was in the possession of the land in suit on the first day of September, 1876, and when this action was commenced withheld the possession from the plaintiff.

21. That the rents and profits of the said land in suit are of the annual value of $150.

22. There is no record in the United States land-office at Stockton or elsewhere showing any selection of said land by the state of California, or any of its officers, prior to July 23, 1866, except so far as such selection may be shown by the facts hereinbefore found; nor is there any record showing that there was any certification of this

land as swamp and overflowed land ever made to the state of California.

And as a conclusion of law from the foregoing facts, the court finds that the defendant is entitled to judgment, and it is so ordered.

It is contended on behalf of plaintiff that he is entitled to recover the land in suit under the first clause of section 4 of the act of Congress of July 23, 1866, entitled "An act to quiet land titles in California." (Sec. 14, U. S. Stats. at Large, p. 219.) The clause just referred to is as follows:—

" That in all cases where township surveys have been or shall hereafter be made under authority of the United States, and the plats thereof approved, it shall be the duty of the commissioner of the general land-office to certify over to the state of California, as swamp and overflowed, all the lands represented as such, upon such approved plats, within one year from the passage of this act, or within one year from the return and approval of such township plats."

It is urged that the township survey having been made in this case and the plat approved before the act of July 23, 1866, was passed, on which approved plat the land in controversy was represented as swamp and overflowed, it then became the duty of the commissioner of the general land-office under this clause of the fourth section to certify such land over to the state of California as swamp and overflowed, within one year after the passage of the act aforesaid; and that as such duty was a merely ministerial one on the part of the commissioner, the above-mentioned portion of the act was in effect a confirmation to the state of ·the land in controversy, that thus the title vested in the state and passed to the plaintiff, claiming under the state.

Conceding that such would be the consequence had the land in suit been represented as swamp and over-

flowed, on the approved plat of the township survey, we are of opinion that the land is not so represented on the plat. The finding is, that the land is designated thereon as "subject to periodical overflow." We cannot say that the words used, "land subject to periodical overflow," are the same in meaning as "swamp and overflowed land," or that they are intended to designate land as swamp and overflowed. So holding, we cannot sustain the above contention of plaintiff. We hold the same as to the first clause of section 2488 of the United States Revised Statutes, which is substantially a re-enactment of the first clause of the fourth section of the act of 1866.

It is further contended on behalf of plaintiff that as the land in controversy had been surveyed upon the application to purchase made by Hartwell, the assignor of plaintiff, by the county surveyor of the county of San Joaquin, that the surveyor made a plat and field-notes of the north-west quarter in suit, in accordance with the United States survey of the township, section, and quarter-section, described the same as swamp and overflowed, and containing 160 acres, returned such plat and field-notes to the state surveyor-general, who received and filed the same in his office on the 22d of October, 1865, and approved them on the 23d of November, 1865; that by virtue of the second clause of the fourth section of the act of 1866, above cited, and the second clause of section 2488 of the United States Revised Statutes, the title has passed to the state, and through it to the plaintiff.

The second clause of section 4 referred to is as follows: —

"The commissioners shall direct the United States surveyor-general for the state of California to examine the segregation maps and surveys of the swamp and overflowed lands made by said state, and when he shall find them to conform to the system of surveys adopted by the United States, he shall construct and approve

township plats accordingly, and forward them to the general land-office for approval."

The second clause of section 2488 of the Revised Statutes is substantially the same.

We are of opinion that the surveys and plats made as in this case, under the acts of 1863 and 1868, on the application of a party desiring to purchase the tract sought to be purchased, are not the segregation maps and surveys referred to in the act of Congress of July 23, 1866, and the section of the Revised Statutes above referred to.

Granting the survey and plat made on the application of Hartwell to purchase a specific tract of land (the northwest quarter in controversy) was a segregation map and survey such as is embraced within the above-quoted clause from the act of 1866, it does not appear that the commissioner gave any direction to the United States surveyor-general for this state, as required by the act, or that if such order was given it was complied with, or that any township plat was made under this order, or if made, that it was approved at the general land-office.

Such being the case, we cannot hold that any title has vested in the state under the clauses just above referred to, of the act of 1866, and section 2488 of the Revised Statutes.

It would be going far to hold that the land in controversy was ever in any manner recognized by the land department at Washington as swamp and overflowed land, when it appears from the findings that in a controversy wherein the parties herein, including the state, were notified, and were heard, or had an opportunity to be heard, it was decided by the United States surveyor-general for California that the land in suit was not swamp and overflowed, which decision was afterwards affirmed by the Secretary of the Interior. This decision was made, as appears from the findings, upon a trial had

by order of the Secretary of the Interior, in which the question to be determined was whether or not the land in controversy was swamp and overflowed, and was ordered to be had under the last clause of section 4 of the act of July 23, 1866.

The foregoing disposes of all the material points—discussed by the counsel for appellant.

There is no error, and the judgment is-affirmed.

McKEE, J., and SHARPSTEIN, J., concurred.

Hearing in Bank denied.