[Sac. No. 808.   Department One.—August 22, 1901.]

AGNES BLAKELEY FREDERICKS, Respondent, v. D. K. ZUMWALT, Appellant.

PUBLIC LANDS — CRITERION OF SWAMP-LAND GRANT — UNITED STATES PATENT TO SETTLER. — The criterion of the state's title to swamp and overflowed land granted by the act of September 28, 1850, is that the greater part of the smallest legal subdivision, consisting of forty acres, was too wet for cultivation. If the greater part thereof was fit for cultivation, the subdivision was not included in the grant, and the patent of the United States to a settler thereupon will confer upon him the legal title.

ID. — ABANDONMENT OF STATE'S CLAIM IN FAVOR OF SETTLERS AND PATENTEES. — By the act of March 10, 1874 (Stats. 1873–74, p. 137), the state expressly abandoned all claim to lands, as swamp and overflowed, which had been patented to pre-emption or homestead settlers by the United States, or which were then occupied by such settlers in good faith under declaratory statements filed thereupon.

ID. — SWAMP-LANDS EXCEPTED BY STATE — NEARNESS TO TOWN — VOID CERTIFICATE OF PURCHASE. — By the act of April 4, 1870 (Stats. 1869–70, p. 875), all swamp and overflowed lands situated within two miles of any town or village were excluded from grant by the state; and, upon supposition of the state's title to lands so situated, a certificate of purchase thereof by the register of the state land-office, as swamp-land, is void.

APPEAL from a judgment of the Superior Court of Tulare County.   W. B. Wallace, Judge.

The facts are stated in the opinion of the court.

E. O. Larkins, and U. T. Clotfelter, for Appellant.

Alfred Daggett, for Respondent.

VAN DYKE, J.—Action to quiet title, and appeal from a judgment in favor of plaintiff.

The premises in question consist of a portion of the southwest quarter of the southwest quarter of section 28, township 18 south, range 25 east, Mount Diablo base and meridian, in Tulare County.

The plaintiff and respondent deraigns title from one Reuben Mathews, who entered upon the subdivision embracing the premises in question as United States land, and obtained a patent for the same from the United States, January 2, 1861. The defendant and appellant claims under title derived from one Samuel Simon, who received a certificate as swamp and overflowed land from the register of the state land-office, April 8, 1874.

Plaintiff's counsel, in his brief, says: "If the land in controversy belonged to the United States when Reuben Mathews obtained his patent on January 2, 1861, then appellant has no legal title to it. If, on the other hand, said land belonged to the state of California at that time, then said land certainly belongs to appellant, for he has whatever title the state of California can give him by certificate of purchase."

1. As to the first proposition, Did the land belong to the United States at the date of the patent of Mathews? The official survey of township 18 south, range 25 east, Mount Diablo base and meridian, was made and sectionized, and the plat thereof approved and filed in the United States land-office, April 15, 1855; and from the approved map of said survey it appeared that the greater portion of the southwest quarter of the southwest quarter of said section was returned and designated on said township plat as high and dry land, and only about $12\frac{26}{100}$ acres of said subdivision was designated as "swamp," and that no portion was designated as swamp and overflowed land, or wet and unfit for cultivation. The title of the state of California to swamp and overflowed land is derived from the act of Congress, commonly called the "Arkansas Act," approved September 28, 1850. Appellant contends that

because it appears upon the approved township plat that a portion of the subdivision in question was swamp-land, therefore that portion which is the land in controversy passed immediately to the state of California; that the grant is one *in præsenti;* and that the officers of the United States land-office had no authority to issue a patent for the same to Reuben Mathews. It is provided by section 3 of said act that lists and plats showing the land conveyed to the state shall be prepared from the maps and plats of surveys by the United States, and "all legal subdivisions, the greater part of which is wet and unfit for cultivation, shall be included in said lists and plats; but when the greater part of the subdivision is not of that character, the whole of it shall be excluded therefrom."

The supreme court of the United States, in *Railroad Co.* v. *Smith,* 9 Wall. 99, had occasion to construe this swamp-land act, and in reference to the provisions contained in section 3, above quoted, it is said: "Congress has here given a criterion, apparently not difficult of application, by which to determine what was granted,—to wit, such legal subdivisions of the public lands, the greater part of which were so far swamp and overflowed as to be too wet for cultivation." The phrase "legal subdivision," as used in the act of Congress relating to swamp and overflowed lands, refers to the smallest subdivision under the Congressional system of surveys, and it has been held that section 3 of the act amounts to a limitation upon the general terms of the grant, and constitutes a more accurate designation of the lands granted. The smallest regular subdivisions under the Congressional system are quarter quarter-sections, or forty-acre lots.

In *Robinson* v. *Forrest,* 29 Cal. 324, it is said: "The first section, when read in connection with the third, which serves to limit and define the more general terms of the first, expresses a grant to the state of the legal subdivisions of the public lands, the greater part or all of which are wet and unfit for cultivation, and is not a grant of the swamp and overflowed land without regard to legal subdivisions. In case the subdivision is intersected by the boundary of swamp and overflowed land, the question whether such subdivision vested in the state is solved by ascertaining as a matter of fact whether the greater part of said subdivision is swamp and overflowed land or dry land. It thus appears that, under the operation of the act, dry land may be included, and swamp and overflowed may be

excluded, from the grant, and that where the land lies adjacent to the margin of swamp-land, the title to any given parcel of swamp-land does not vest in the state, unless it appears that it forms the larger part of a legal subdivision." (See also *Keeran* v. *Allen*, 33 Cal. 542; *Hogaboom* v. *Ehrhardt*, 58 Cal. 233.)

In order to have the land pass to the state under the act in question, it must appear that the greater portion of the smallest subdivision — to wit, forty acres — is wet and unfit for cultivation. In this case less than one third of such subdivision was indicated as swamp-land, and none of it was indicated as wet and unfit for cultivation. And the court finds that Mathews, to whom the patent was granted by the United States, settled upon the forty acres in question in 1858, only three years after the filing of the plat in the United States land-office, and cultivated and improved said land, including the tract in controversy, up to the time the patent was issued, and thereafter he and his grantees continued to cultivate and improve the same. The land in question was not returned as swamp *and overflowed, or wet and unfit for cultivation;* and, on the contrary, as a fact it was fit for cultivation in its natural condition. The land, therefore, never became vested in the state, and was subject to grant by the United States, and passed by patent to Mathews. (*Heath* v. *Wallace*, 71 Cal. 50; 138 U. S. 580; *Cragin* v. *Powell*, 128 U. S. 691.)

2. By an act of this state, passed March 10, 1874 (Stats. 1873–74, p. 327), it is enacted: "From and after the passage of this act, no claim shall be made by the state for any land as swamp and overflowed, nor shall the same be segregated by authority of the state, for which pre-emption or homestead patents have been issued by the United States, or upon which there are settlers, occupying the land in good faith, who have filed their pre-emption or homestead declaratory statements; nor shall the register of the state land-office receive any application for swamp and overflowed land, unless the application be accompanied by a certificate from the register of the United States land-office for the district in which the land is situated that there is no pre-emption or homestead filing upon the land sought to be purchased." That act, by its terms, went into effect at the date of its passage, and therefore was a law prior to the issuing of the pretended certificate by the register of the state land-office to Samuel Simon, under whom

defendant claims.   It also appears that the land in question is within two miles of and adjoining the city of Visalia; that Visalia became an incorporated town, May 6, 1864, and remained such until February 27, 1874, when it was incorporated as a city.   By the provisions of an act amending the act for the management and sale of lands belonging to the state, approved April 4, 1870, it is declared that all swamp and overflowed lands within two miles of any town or village are excluded from the provisions of said act.   (Stats. 1869-70, p. 875; Pol. Code, sec. 3488.)   Therefore, under the findings and admitted facts in this case, the land in question, even if it had been state land, was not subject to grant at the date of said certificate to Simon, but was expressly excluded therefrom by the terms of the act just cited.   The certificate, therefore, issued by the register of the state land-office was void, even if it were conceded—which it is not—that the land at the time belonged to the state.   (*People* v. *Stratton*, 25 Cal. 242; *Klauber* v. *Higgins*, 117 Cal. 458; *Doolan* v. *Carr*, 125 U. S. 618.)

Judgment affirmed.

Harrison, J., and Garoutte, J., concurred.