[Civ. No. 3012. Fourth Dist. Mar. 17, 1942.]

LILLIAN KELLEY et al., Respondents, v. HUBBARD S. RUSSELL, Appellant.

Cobb, Campbell & Kelley and Edward Flam for Appellant.

Alfred Siemon, Bennett Siemon, Sullivan, Roche & Johnson, J. H. Farraher, U. T. Clotfelter, L. W. Butterfield and Louis L. Swarthe for Respondents.

BARNARD, P. J.—This is an appeal from a judgment for the plaintiffs in an action for specific performance.

The respondent Lillian Kelley was formerly the owner in

fee of all of the land here involved. On July 30, 1919, she conveyed about 900 acres of land in Kern County to one Anderson and, as a part of the same transaction, took back a lease on the same property giving her the right to explore for, develop and produce oil and other minerals therefrom during the term expiring July 30, 1939, without royalty or other payment to the lessor. The lease also provided that Miss Kelley should have the right, during said term, to purchase at $20 per acre the fee title "to any forty (40) acre tract of said land (according to the legal subdivision thereof) upon which" oil or other minerals had been discovered in paying quantities, together with not more than three additional forty-acre legal subdivisions cornering or adjoining the one on which discovery was made, with the further provision that the minimum number of acres which might be purchased when oil was discovered was forty acres unless the legal subdivision upon which oil was discovered was a fractional forty acres. It was also provided that in the event any land was purchased under this provision the lessor should have the right to repurchase the same at $20 an acre at any time thereafter when the wells or mines were abandoned. The lease further provided that the lessor should have the right to any water developed by the lessee on the land and not required in her operations. The lease also contained this provision: "It is expressly understood, any provisions of this lease, notwithstanding, that in no event shall the lessee have the right to purchase, or shall lessor be required to sell any ten-acre parcel of said premises upon which is located any water well, spring or other water supply now used for watering cattle, irrigation or domestic purpose."

In 1923, the respondent Kelley also conveyed about 200 acres of adjoining land to the appellant Russell and one Babbitt and took back a lease thereon, the terms of which were practically identical with the terms of the lease above described, and this lease and option was also to expire on July 30, 1939. The appellant Russell acquired title to and became the owner of both of the tracts above mentioned, subject to these leases, and about the same time he purchased other land in the vicinity, acquiring in all about 9,000 acres. He was in the cattle business and purchased the land for grazing purposes.

The respondent Chanslor-Canfield Midway Oil Company acquired by assignment from Miss Kelley her interest in a

portion of the lands thus leased to her, and respondent Kelley still retains her interest in the remainder of the lands under the leases subject to certain subleases and agreements to other parties who claim under her, including the respondent Golden Bear Oil Company. Oil was discovered on the property and sixteen producing oil wells were drilled thereon by these two oil companies at a cost of some $500,000, and these wells are still producing oil in paying quantities.

In May, 1939, and prior to the expiration of the leases and options, the respondents Kelley and Chanslor-Canfield Midway Oil Company attempted to exercise their options to purchase six forty-acre tracts according to the legal subdivision thereof, being the tracts on which oil had been developed with certain forty-acre tracts adjacent thereto. At their request, an abstract company wrote to the appellant Russell advising him that these parties were exercising their optional rights and that the agreed purchase price would be paid to him upon his advising them that he would execute the necessary deeds. Russell replied to the effect that he had had no dealing with the abstract company and that he had thus far received nothing from the real parties in interest indicating their desires or intentions.

On June 20, 1939, respondents Kelley and Chanslor-Canfield Midway Oil Company wrote to Russell notifying him that they had elected to and did thereby exercise the options to purchase these six described forty-acre tracts, as provided for in the leases and by virtue of the discovery of oil in paying quantities upon certain described forty-acre tracts, and also informing him that they had been advised by the defendant Pacific Indemnity Company that it was entitled to receive the money to be paid for the land, and that they had deposited the purchase price of the land, amounting to $5,213.80, with the Bakersfield Abstract Company to be paid to the party entitled thereto and offering to pay this amount to Russell or to the Pacific Indemnity Company, as might be directed by them, upon the conveyance of the fee title. With this letter were sent forms of conveyances, with the request that these be executed and returned to the abstract company with instructions regarding the delivery of the same and the payment of the purchase price therefor. A copy of this letter was sent to the Pacific Indemnity Company. It is admitted that Russell had previously assigned his interest in these leases to the Pacific Indemnity Company for security purposes.

On June 22, 1939, Russell replied to this notice of election and offer to pay the purchase price, stating that he had no proof that oil had been discovered on the land; that since at the time of the execution of the lease the waters of Poso Creek as well as certain water wells were located upon a portion of the premises "it will be necessary to have a rather careful and authentic survey made to determine which ten-acre portions are excepted under said paragraph from the option provisions involved"; that there was a discrepancy in their notice with respect to the date of one of the leases; that the amount of the purchase price as stated by them was slightly too high; and that "I merely wish to point these discrepancies out to you in order that we may not at a later time be under any confusion in reference to the matter." The respondents replied to this letter on June 23, 1939, correcting the discrepancy in the date of the lease; explained the amount of money deposited in escrow by saying that some of the forty-acre tracts, according to the government legal subdivisions, contained slightly more than forty acres; stating that the existence of the oil wells was well known and could be easily proved; and saying that if any water wells, springs or other water supply were actually located on the property they were electing to purchase at the time the leases were executed these could be excepted from the conveyance if Russell would advise them what land should be so excepted. On June 30, 1939, Russell replied to this letter saying he was turning the matter over to his attorney and stating "I wish to settle the matter with the least possible difficulty."

On June 28, 1939, Russell was again advised by an attorney for the respondents that the money for the purchase of these lands was in the hands of the Bakersfield Abstract Company but no offer to convey or expression of willingness to convey the property in question or any part thereof or upon any terms whatever were communicated to the respondents by the appellant. Being unable to get such a conveyance the respondents filed this action on July 26, 1939, and before the leases and options had expired. The complaint alleged, among other things, that written notice of a desire to exercise these options had been given on June 20, 1939, with a request for a conveyance of that part of the property; that the defendants had failed and refused to convey said lands or any part thereof, although no objection had been made to the manner of the exercise of the option or to the mode or amount

of the offer and tender; that the purchase money was ready and available at the time of the offer and tender and is still ready and available; and that respondents offered to pay and deposit the amount due in court to be paid to the appellant or the other defendant upon a conveyance of the property. The amount of the purchase price was later and during the trial actually paid into court.

During the trial the respondents offered to accept deeds to the property in question, excepting therefrom any ten-acre parcels upon which there had been wells, springs or other sources of water supply, provided these were so chosen as not to include any property upon which there was a producing oil well, and it is conceded that a similar offer was made by the respondents before the action was filed. The court found in all respects in favor of the respondents and entered the judgment from which this appeal was taken. In this connection it may be observed that while the court found that there was a water well upon the property in question at the time the leases were executed and that this water well was later abandoned, the judgment gave the appellant a license and easement to use any water on the premises at the time of the trial instead of excepting any ten-acre parcel from the conveyances ordered to be made to the respondents. This portion of the judgment was based, in part, upon findings to the effect that the appellant had refused, and still refuses, to pick out a ten-acre parcel upon which there was or had been a water supply without including therein any property upon which there was a producing oil well. It should be further observed that in his answer and ever since, the appellant claims that five ten-acre tracts along the southern boundary of the property here in question are excepted under the terms of these options because they had water wells or other sources of water supply located thereon at the time the leases were executed. It so happens that nine of the sixteen oil wells are located on these five ten-acre tracts.

While the leases themselves indicate rather clearly an intention to give the lessees all of the oil and mineral rights and to preserve the water rights for the use of the lessor, the appellant now appears to be interested only in obtaining the oil rights. His two main contentions are that he is entitled, in selecting the land that is to be excepted from any conveyance under the terms of the lease, to take any square ten-acre parcel which constitutes one-fourth of a legal subdivision

of forty acres and upon any part of which a water supply existed, and that he is entitled to retain all of the property on which oil wells are located since the options were not properly exercised.

It is first contended that the options were not properly exercised for the reasons that only one notice of election to exercise the options was served although there were two leases and options; that Miss Kelley had assigned a portion of her option rights to other parties who did not join in the notice of election; that the notice of election, as given, covered certain forty-acre tracts but did not exclude the five ten-acre parcels which the appellant claims he was not bound to convey and therefore was not in accordance with the terms of the options; that the deeds which the respondents sent with the notice of election did not contain certain reservations provided for in the leases and options; and that no sufficient tender was made.

█ It may be first observed that with the exception of the point that the notice of the exercise of these options applies to more land than the lessees were entitled to purchase since it did not exclude any ten-acre parcel on which there had been a water supply, the objections to the exercise of the option now raised were all waived by the appellant since they were not included in such objections as were raised in replying to the notices first given by the abstract company and later given by the respondents on June 20, 1939. █ While there were two leases and options the interested parties were the same and no reason appears why the two parties entitled to exercise the options could not join in one notice. The appellant was in no way prejudiced and no reason appears why he could not have complied insofar as he was bound, without affecting his right to claim an exception as to a part of the property. The mere fact that the two optionees joined in one notice is immaterial. There was good reason for the respondents to attempt to complete the transfer through an escrow with an abstract company since the Pacific Indemnity Company was claiming the money which was to be paid to the appellant. Several of the objections to the form of the offer and to the tender are eliminated by the fact that the appellant did not recognize the escrow with the abstract company and a new notice of election was directly given by the respondents. █ The fact that the deeds which accompanied the original notice were deficient in form is

immaterial since they were not used. They were offered as a mere matter of courtesy and the duty of furnishing deeds rested upon the appellant. ■ When the appellant, in reply to the notice of the desire to exercise the option, called attention to the provision of the leases for the exclusion of any ten-acre parcel containing a water supply and stated that it had not been determined what land should be excepted on that account, the respondents offered to exclude any such ten-acre parcel from the conveyance to be made. The duty rested upon the appellant to name and describe any such ten-acre parcels and the original notice of election was not rendered invalid by the failure to exclude any such parcels. The leases expressly provided in this connection that the lessees, in exercising the options, must offer to purchase full forty-acre tracts or fractional forties, according to the government description. The only way they could comply with the terms of the options was to do this and if the appellant was then entitled to exclude any portion thereof from the conveyance under other clauses of the lease, it was incumbent upon him to do so. ■ There was ample evidence that while Miss Kelley had subleased portions of the property, she had assigned no part except that held by the Chanslor-Canfield Midway Oil Company, and with that exception she had retained the full right to exercise the options in her own name and her sublessees, while they may have been proper parties, were not necessary parties either to the notice of election or to this action. ■ Not only was there an offer to pay the full amount due, which amount was deposited with the abstract company, since another party claimed to be entitled thereto, but the appellant refused to name and describe any ten-acre parcel which he desired to except from the conveyance as containing a water supply, and this made it impossible for the respondents to make a personal tender of the exact amount due. This situation was brought about by the act of the appellant and the respondents filed this action before the option time had elapsed and in their complaint offered to comply with all of the terms of the leases and options, offered to pay the money into court for whoever was entitled thereto, and during the trial the money was actually paid into court. During the trial the respondents offered to permit the appellant to select any ten-acre tract upon which there had been a water supply at the time the leases were executed provided that any such tract was so selected as not to include one of the

oil wells. The appellant conceded that this same offer had been made to him before the action was begun. We think a sufficient offer and tender appears. (Civ. Code, secs. 1496 and 1511; Code Civ. Proc., sec. 2076.) It further appears that there was a sufficient attempt to exercise the options with a sufficient performance of the conditions thereof. (*Kofoed* v. *Gordon*, 122 Cal. 314 [54 Pac. 1115] ; *Cates* v. *McNeil*, 169 Cal. 697 [147 Pac. 944] ; *Marshall* v. *Hilton*, 209 Cal. 531 [289 Pac. 165].) A number of the objections now raised were waived, and any possible defects in connection with the form of the election and of the tender were cured by the timely commencement of this action and the offer to pay the money into court, which was actually done.

 Appellant's next point is that these option contracts cannot be specifically enforced because they were uncertain and lacked mutuality. This is based on one of the findings of the court to the effect that there is no ten-acre parcel containing a water well, spring or other water supply which is defined or can be identified by the terms of the leases, and that the appellant has failed and refused properly to designate or specify any such ten-acre parcel which he claims the right to except from the conveyance. From this it is argued that the option provisions are so uncertain that they cannot be specifically enforced. Any uncertainty which exists arises neither from the terms of the options nor from the court's finding but from the refusal of the appellant to designate any such parcels upon which a water supply existed without including land upon which the oil wells were located. The mere fact that the appellant had the right under the options to claim and exclude from the forty-acre tracts, which the respondents were obliged to offer to purchase, any ten-acre parcels upon which a water supply had existed at the time in question, does not make these option contracts so uncertain as to be unenforceable. (*Lange* v. *Waters*, 156 Cal. 142 [103 Pac. 889, 19 Ann. Cas. 1207] ; *Stamm* v. *Colvin*, 94 Cal. App. 180 [270 Pac. 744] ; *Janssen* v. *Davis*, 219 Cal. 783 [29 Pac. (2d) 196].) If the appellant desired to exercise the right given him to exclude any ten-acre tracts from the conveyances he was required to make, this exclusion depended upon facts which were readily determinable and the entire matter was one which was well within the powers of a court of equity. (*Relovich* v. *Stuart*, 211 Cal. 422 [295 Pac. 819] ; *Fleishman* v. *Woods*, 135 Cal. 256 [67 Pac. 276].)

The real controversy in this connection is as to whether the appellant had a right under the terms of the options to select any ten-acre tracts upon which a water supply had existed by taking a square ten-acre parcel constituting the one-fourth part of any forty-acre tract, instead of selecting such a ten-acre parcel by taking ten acres around the water supply, whatever the form might be, but in such a manner as not to interfere, when possible, with the respondents' oil wells. The appellant concedes that there is nothing in the exception provisions of the options to indicate the shape or form of the ten-acre parcels he might be entitled to retain, but claims that since the rights to purchase were limited to forty-acre parcels according to the "legal subdivision," it follows that the parties intended that the ten-acre parcels should also be according to the "legal subdivision." The leases do not so provide but use different language with reference to the ten-acre parcels than that used with reference to the forty-acre tracts. It not only should be assumed that this was intentionally done, but this provision of the options should be considered and interpreted in connection with the other provisions of the leases and options. The instruments as a whole clearly disclose an intention to give the oil rights to the lessees if oil is found and so long as it is produced and to preserve the lessor's rights to all unused water since he was interested only in the use of the land for the purpose of grazing cattle thereon. The appellant was even given the right to repurchase oil land which had been purchased under the options, after its use for oil purposes had been abandoned. The leases having failed to specifically provide for the shape or form of the ten-acre parcels, it certainly was reasonable for the trial court, as it did, to interpret this provision in the light of the entire instrument and the obvious intention of the parties, as requiring the appellant to select any such ten-acre parcels in such a manner as to best protect his water rights while at the same time interfering as little as possible with the respondents' oil rights. That this was the intention of the parties not only may be reasonably inferred from the leases themselves, but appears from appellant's letter to the respondents in reply to their notice of election in which he states that a survey will have to be made in order to determine which ten-acre tracts are to be excluded. This indicates that even at that time he did not understand that the parcels in question were to be exact quarters according to

"legal subdivision" of forty-acre tracts as thus legally described, since no survey would then have been necessary and the deeds could have been drawn by describing quarters of forty-acre tracts. Incidentally, there is no such thing as a legal subdivision of less than forty acres. (*Fredericks* v. *Zumwalt*, 134 Cal. 44 [66 Pac. 38].) In our opinion, the court's interpretation of this clause of the option is a reasonable one and must be upheld.

The appellant has contended at the trial and here that the options were not properly exercised since the notice of election demanded the conveyance of more land than that to which the respondents were entitled and in this connection has contended that five square ten-acre tracts along the southern boundary of the property here in question were parcels each of which had upon it a well, spring or other water supply at the time the leases were executed. Our attention is called to no evidence whatever of any such water supply on either the westernmost or easternmost of these ten-acre parcels. It is contended, however, that Poso Creek, at the time the leases were executed, flowed over the south half of the middle one of these ten-acre parcels and in entering and leaving that parcel also flowed over the corner of the two adjoining ten-acre parcels. ■■■ The court found, however, that while Poso Creek now flows in this manner over a portion of these three ten-acre parcels, that it did not so flow at the time these leases were executed. There is evidence that the course or channel of this creek has moved north through the years, caused by the washing down of rocks and debris from the surrounding hills by heavy storms, thus blocking the old channel and causing the waters of the creek to pass more to the north. While there is some conflict in the evidence, there is evidence justifying the inference that this creek did not flow over any of the lands here in question at the time these leases were executed; that the creek was then a considerable distance south of the southerly boundary of these lands; and that the waters of the creek did not flow over any of this land prior to about 1931. The evidence sufficiently supports the court's finding in this regard. The court also found that the waters of this creek were not intended by the parties as such a source of water supply as was intended to come within the provision for the exclusion of any ten-acre parcel "upon which is located any water well, spring or other water supply now used." It seems rather incredible that it should have

been intended to include any such source of water supply as would come from an open creek running across thirty acres of land when the parties used the language referred to. Had such a source of water supply then existed, it seems probable that different language would have been used in describing it. It is unnecessary, however, to give the matter further consideration in view of the finding that this creek did not flow over this land at that time.

Technically, but not equitably, the most serious question presented is whether the provision of the judgment giving the appellant an easement to use all of the waters of Poso Creek instead of allowing him to retain the legal title to a particular ten-acre parcel can be sustained. The court found in accordance with the evidence that upon one of the ten-acre parcels as now outlined by the appellant there was, at the time the leases were executed, a well which had been used for watering cattle, and that this well had been abandoned many years before the trial. While that is true, the exception provision of the options relates to land upon which a water supply existed at that time. It happens that the ten-acre parcel, as outlined by the appellant, upon which this water well then existed was one of the three ten-acre parcels, as thus outlined, over which Poso Creek now flows and in which the appellant was given an easement for the use of all of the water. While this easement gives the appellant more than he is entitled to, insofar as the use of the water is concerned, this portion of the judgment does not strictly follow the provisions of the options. On the other hand the appellant, although he had the right to have excepted from any conveyance and to reserve the fee title to a ten-acre parcel upon which there had been a water well, he was not entitled under the court's interpretation of the contract to make an arbitrary selection of a square ten acres constituting a one-fourth part of the forty-acre tract according to legal subdivision thereof. It appears that it was perfectly possible to select a ten-acre parcel upon which this old water well existed without interfering with any of respondents' oil wells. As a matter of fact, it appears that it would be possible to select a ten-acre parcel including both this old water well and all of Poso Creek which now flows over the lands in question, without interfering with any of these oil wells. This the appellant did not desire to do and refused to do. Moreover, no point is here raised attacking the judgment for this particular reason and to the end of obtain-

ing his exact rights in this respect. The whole question is raised and presented as a part of the contention that no valid exercise of the option was made, that respondents are without any rights at all, and that the appellant is entitled to refuse to make any conveyance to the respondents and to retain not only the oil wells located upon the five ten-acre parcels which he has selected but all of the oil wells upon all of the lands in question. It clearly appears that the appellant did not and does not desire to select a ten-acre parcel in accordance with the exact rights given him by the leases and options, and under the circumstances, the appellant having himself offered to do equity, the court was justified in treating the matter as it did and no good reason is here presented for reversing the judgment in order to secure a more strict compliance with something which the appellant does not want. What he asks for is a judgment to the effect that the options were never exercised.

The only other point requiring consideration is that the court erred in refusing to admit into evidence two exhibits consisting of letters. The first of these was from a brother of Miss Kelley, who had no interest in the land and who had since died, and the statements in the letter were not only hearsay but were merely cumulative to the other evidence in the same connection. The second exhibit was entirely immaterial and no error in either connection appears.

For the reasons given the judgment is affirmed.

Marks, J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 14, 1942.