Filed 2/24/14  P. v. Petkowski CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSEF PETKOWSKI,<br><br>    Defendant and Appellant. | H038949<br>(Santa Clara County<br>Super. Ct. No. C1109940) |

A jury convicted defendant Josef Petkowski of resisting, delaying, or obstructing an officer, a misdemeanor.  (Pen. Code, § 148, subd. (a)(1).)[1]  The court sentenced him to six months in county jail.

Defendant raises the following claims on appeal:  (1) the court erred in admitting expert testimony that the arresting officers used proper force; (2) the court erred in denying defendant's mid-trial request for a continuance; and (3) defense counsel provided ineffective assistance of counsel by failing to object to the expert testimony, failing to present an expert witness, and failing to request a pinpoint instruction on the use of a taser.

We find defendant's claims without merit, and we will affirm the judgment.

---

[1] Subsequent undesignated statutory references are to the Penal Code.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. *Facts of the Offense*

The offense arose out of an altercation between defendant and his next door neighbor, Arturo Federico, on the morning of June 22, 2011. Federico was sorting some boxes in his yard when defendant reached across a fence, grabbed Federico's wind chimes, and tried to pull them down. Federico and defendant exchanged angry words, and defendant threatened to kill Federico by hitting him in the head with a baseball bat. Federico went inside to call the police. When Federico's wife went outside to check on the wind chimes, defendant also threatened to kill her with a bat. Defendant used his hand to make shooting motions.

Shortly thereafter, a San José police officer arrived at Federico's residence. Defendant was in his front yard yelling and trying to get the officer's attention. Defendant was using his hands to make circular motions around his ear and pointing at the Federicos, as if to suggest they were crazy. Federico told the officer about the incident with the wind chimes and defendant's threats to kill him and his wife with a bat. While the officer was interviewing the Federicos, defendant began to approach the Federicos' property. The officer walked towards defendant and told him to back up. Defendant did not want to talk with the officer and said he wanted to talk to a "competent officer."

Two more police officers then arrived. Defendant appeared loud, hostile, and uncooperative. He refused to talk to the newly arrived officers. The police wanted to patsearch him for weapons, but defendant refused and got into a "combative" or aggressive stance. One officer unholstered his taser and pointed it at appellant while stating, "I really don't want to do this. All I want to do is pat search you. Please don't make me do this."

2

Defendant then "bolted" towards his front door. The officer holding the taser, who was between defendant and his house, testified that defendant struck him in passing. The officer estimated defendant was 6 feet 6 inches tall, weighing 275 pounds. The officer discharged the taser at defendant, but defendant made a swiping motion where the taser would have hit him, and he continued into his house. He locked the screen door behind him, and remained in the house with his parents.

The three officers testified differently about what happened next. One officer testified that defendant came out of the house and attacked them, whereupon an officer discharged a taser at defendant. Two other officers testified that they entered the house and an officer discharged a taser at defendant inside the house. But they all testified that defendant exited the house at some point, that he was tased, and that a physical struggle ensued. Defendant was either punching or flailing his arms, and one officer was struck or scratched in the face. As defendant lay on the ground kicking and struggling, the officer with the taser applied it directly to defendant's body and discharged it again. Defendant continued to struggle physically. Defendant was struck with a baton several times, and the officers eventually handcuffed him. The officers requested additional backup assistance while they held defendant on the ground. As a result of the scuffle, one officer suffered two scratches to the face, abrasions on his legs, pain in his back and neck, and other minor injuries. Another officer suffered lower back strain and an abrasion on his elbow.

San José Police Sergeant Lawrence Day arrived at the scene after defendant had been handcuffed and subdued. Sergeant Day testified that, as a district supervisor, he had the responsibility to ensure the incident was investigated properly. He spoke with the officers and the Federicos, and then went to the hospital to interview defendant. Defendant said he was angry with the Federicos, and he admitted that he told Mrs. Federico he wanted to beat her head with a baseball bat. Defendant said he had been annoyed by the arresting officers, and that he did not want to talk to them about the

3

incident.  Defendant admitted that he might have struck one of the officers while trying to escape into the house.  When Sergeant Day asked defendant whether he had resisted arrest, defendant said he did not think the officers should have been there.

B. *Procedural Background*

On July 28, 2011, an information charged defendant with making criminal threats (§ 422), resisting an officer (§ 69), two counts of felony battery on a peace officer (§§ 242, 243, subd. (c)(2)), and two counts of misdemeanor battery on a peace officer (§§ 242, 243, subd. (b)).  The case went to trial in October 2012.

At trial on Tuesday, October 16, the prosecution moved to admit Sergeant Day as an expert in the use of force.  Defense counsel declined to voir dire him, but requested his CV.  Without responding to defense counsel's request, the trial court qualified Sergeant Day as an expert.  The prosecutor then elicited Sergeant Day's opinion about the officers' use of force:

> "[Question:]  So given your review of the reports in this case, what is your opinion as to whether or not proper force was used?
>
> "[Answer:]  The force used in this incident was completely and 100 percent proper.
>
> "[Question:]  And why is that?
>
> "[Answer:]  Based on the totality of the circumstances, violent defendant threatening to kill somebody and then the officers talking to him and him not cooperating and punching an officer, running towards the house trying to get away from the officers, I've not been in that situation but I've been in similar ones, and it's scary.  And when you take the size of the defendant into the situation, you don't know what's going on, what's going through their mind.  And your first option is your hands, and against a large man, your hands aren't going to do you very good, you're going to get hurt.

4

"[Defense counsel:] Your Honor, I object to this testimony. I think it's beyond the realm."

The trial court then instructed the prosecutor to ask another question, but the court did not rule on defense counsel's objection. In response to further questioning about the incident, Sergeant Day testified that he would have used a taser under those circumstances, and that if the taser did not work, the next option was to use a baton.

Later that day, the court excused Sergeant Day, the prosecution rested, and court adjourned. The following day, on Wednesday, October 17, after one witness testified for the defense, defense counsel asked to be allowed to present expert testimony on the use of force. The court ruled that the defense could call an expert on the following Friday, October 19. Defense counsel then objected to the court's ruling from the day before that allowed Sergeant Day to testify as an expert. Defense counsel cited a lack of notice, arguing it was a violation of the prosecution's discovery obligations under section 1054. Defense counsel also objected to the form of the questions put to Sergeant Day on the basis that they were not hypothetical questions, and that "[i]t was simply the expert, in essence, saying everything the officers did in this case was correct." Defense counsel claimed this violated defendant's rights to a fair trial and due process. The trial court overruled these objections.

Defense counsel later notified the court and the prosecution that she would not be able to present an expert witness until the following Friday, October 26. Defense counsel then once again lodged an objection to the admission of expert testimony by Sergeant Day on the basis that the prosecution had violated its discovery obligations under section 1054. The court overruled the renewed objection and denied defendant's request for a continuance.

On October 22, 2012, the jury found defendant guilty of the lesser included offense of misdemeanor resisting, delaying, or obstructing an officer. (§ 148, subd. (a)(1).) The jury found defendant not guilty of all other charges. The trial court

5

sentenced defendant to six months in county jail and deemed the sentence served given defendant's credit for time served in custody.

## II. DISCUSSION

Defendant contends Sergeant Day's expert testimony regarding proper use of force was inadmissible because it constituted an opinion on defendant's guilt. He argues the court's admission of the testimony was an abuse of discretion and a violation of his federal due process rights. To the extent defense counsel failed to object to the testimony, defendant contends his attorney provided ineffective assistance of counsel. Defendant also contends the trial court erred in denying his request for a continuance to allow him time to obtain his own expert to testify on use of force. Finally, defendant claims defense counsel was ineffective for failing to present an expert on the use of force and failing to request a pinpoint instruction on the proper use of a taser.

A. *Standards of Review*

We review a trial court's admission of expert testimony for abuse of discretion. (*People v. Lindberg* (2008) 45 Cal.4th 1, 45.) The erroneous admission of expert opinion warrants reversal only if " 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*People. v. Prieto* (2003) 30 Cal.4th 226, 247 [citing *People v. Watson* (1956) 46 Cal.2d 818, 836].)[2]

We review a ruling on a motion for a continuance for abuse of discretion. (*People v. Lewis* (2006) 39 Cal.4th 970, 1036.) "A reviewing court considers the circumstances of each case and the reasons presented for the request to determine whether a trial court's denial of a continuance was so arbitrary as to deny due process. [Citation.] Absent a

---

[2] Defendant argues the court violated his federal due process rights, requiring harmless error analysis under the standard of *Chapman v. California* (1967) 386 U.S. 18, 24 (reversal required unless it is proven beyond a reasonable doubt that the error did not contribute to the verdict). Because we find no error, we need not decide the proper standard for a harmless error analysis under the circumstances presented in this case.

showing of an abuse of discretion and prejudice, the trial court's denial does not warrant reversal." (*People v. Doolin* (2009) 45 Cal.4th 390, 450.)

"To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. [Citations.] Counsel's performance was deficient if the representation fell below an objective standard of reasonableness under prevailing professional norms. [Citation.] Prejudice exists where there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." (*People v. Benavides* (2005) 35 Cal.4th 69, 92-93, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 693-694 (*Strickland*).) " 'Finally, prejudice must be affirmatively proved; the record must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ' " (*Id.* at p. 624.) "It is the defendant's burden on appeal [. . .] to show that he or she was denied effective assistance of counsel and is entitled to relief. [Citations.] '[T]he burden of proof that the defendant must meet in order to establish his [or her] entitlement to relief on an ineffective-assistance claim is preponderance of the evidence.' [Citation.]" (*In re Hill* (2011) 198 Cal.App.4th 1008, 1016.)

B. *The Admission of Sergeant Day's Expert Testimony*

Defendant contends the trial court abused its discretion in admitting Sergeant Day's testimony that "[t]he force used in this incident was completely and 100 percent proper." Defendant argues this testimony was tantamount to an opinion on his guilt. The Attorney General argues that defendant failed to object in a timely fashion, and that even absent any waiver, defendant's claim must fail on the merits because the testimony was properly admitted. We agree with the Attorney General in both respects.

First, defendant failed to lodge a timely objection to the testimony. To preserve a claim for appeal, an objection must be "timely made and so stated as to make clear the

7

specific ground of the objection or motion." (Evid. Code, § 353.) When Sergeant Day initially offered his opinion that the use of force was proper, defense counsel lodged no objection at all. After further questioning, in response to which Sergeant Day began to testify in narrative form, defense counsel objected only that his testimony was "beyond the realm." This objection failed to state with any degree of specificity the grounds on which defendant now rests his claim. Defense counsel did not specifically object to the form of the expert opinion until the following day, after Sergeant Day had been excused and the prosecution had rested its case. At that point, an objection—even if meritorious––could not have been properly sustained because exclusion of the testimony would not have allowed the prosecutor to formulate an alternative question—e.g., a question based on hypothetical assumptions—to elicit admissible testimony on the topic.

But even on the merits, defendant's claim fails because Sergeant Day's testimony did not constitute an opinion on defendant's guilt. " 'California law permits a person with "special knowledge, skill, experience, training, or education" in a particular field to qualify as an expert witness (Evid. Code, § 720) and to give testimony in the form of an opinion (*id.*, § 801). Under Evidence Code section 801, expert opinion testimony is admissible only if the subject matter of the testimony is "sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (*Id.*, subd. (a).)' " (*People v. Vang* (2011) 52 Cal.4th 1038, 1044.) "Testimony in the form of an opinion that is otherwise admissible is not objectionable because it embraces the ultimate issue to be decided by the trier of fact." (Evid. Code, § 805; *People v. Olguin* (1994) 31 Cal.App.4th 1355, 1371.) But a witness may not express an opinion on a defendant's guilt. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 77.) "The reason for this rule is not because guilt is the ultimate issue of fact for the jury, as opinion testimony often goes to the ultimate issue. [Citations.] 'Rather, opinions on guilt or innocence are inadmissible because they are of no assistance to the trier of fact. To put it another way,

the trier of fact is as competent as the witness to weigh the evidence and draw a conclusion on the issue of guilt.' " (*Ibid.*)

Defendant does not dispute that Sergeant Day's testimony on the proper use of force fell within the scope of "special knowledge, skill, experience, training, or education" in the area of law enforcement. By this rule, the testimony properly assisted the trier of fact. Rather, defendant's claim is that the testimony was tantamount to an opinion on defendant's guilt. But this argument is not supported by the law underlying defendant's conviction for resisting, delaying, or obstructing an officer.[3] Section 148, subdivision (a)(1), as relevant here, punishes any person who "willfully resists, delays, or obstructs" a police officer "in the discharge or attempt to discharge any duty of his or her office or employment." The elements of the offense are: (1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties. (*In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1329.) But even when all of these elements are met, "where excessive force is used in making what otherwise is a technically lawful arrest, the arrest becomes unlawful and a defendant may not be convicted of an offense which requires the officer to be engaged in the performance of his duties." (*People v. White* (1980) 101 Cal.App.3d 161, 164.)

Sergeant Day's testimony only concerned the issue of excessive force. In other words, even if the jury had unequivocally accepted Sergeant Day's testimony that the officers' use of force was not excessive, the jury still could have acquitted defendant on the basis that the prosecution had not proven some other element of the offense. Thus,

---

[3] We need not consider the relevance of the testimony to any other offenses, since defendant was only convicted of resisting arrest. If the testimony constituted inadmissible opinion as to any other charge, the error would be harmless, since defendant was acquitted of all other offenses.

9

even though the testimony bore on one issue connected to defendant's guilt, it was not equivalent to an opinion that defendant was guilty. (See *People v. Hunt* (1971) 4 Cal.3d 231, 237 ["it is settled that an officer with experience in the narcotics field may give his opinion that the narcotics are held for purposes of sale"].) Thus, we conclude the trial court did not abuse its discretion in admitting Sergeant Day's testimony.

For the same reasons, we reject defendant's claim of ineffective assistance of counsel for the failure to object to Sergeant Day's testimony. Even if counsel had timely lodged a specific objection to the testimony, the court would have properly overruled the objection. Defense counsel's conduct was therefore not deficient. (*People v. Price* (1991) 1 Cal.4th 324, 387 [counsel does not render ineffective assistance by failing to make motions or objections reasonably determined to be futile].)

C. *The Denial of Defendant's Request for a Continuance*

Defendant also contends the trial court erred in denying his request for a continuance to allow him to present an expert on the use of force. He claims he had good cause for a continuance because the prosecution introduced expert testimony without notice, in violation of discovery rules. Defendant further argues that the trial court's denial of his request violated his federal due process rights. We find these claims without merit.

"A motion for continuance should be granted only on a showing of good cause." (§ 1050, subd. (e); *People v. Seaton* (2001) 26 Cal.4th 598, 660.) "To support a continuance motion to secure a witness's attendance at trial, a showing of good cause requires a demonstration, among other things, that the defendant exercised due diligence to secure the witness's attendance." (*People v. Wilson* (2005) 36 Cal.4th 309, 352.) "The court must consider ' " 'not only the benefit which the moving party anticipates but also the likelihood that such benefit will result, the burden on other witnesses, jurors and the court and, above all, whether substantial justice will be accomplished or defeated by a granting of the motion.' " ' " (*People v. Doolin, supra,* 45 Cal.4th at p. 450.)

10

Defendant requested a continuance to seek an expert following the prosecution's introduction of expert testimony from Sergeant Day.[4] Defendant's request for a continuance was made on October 17, 2012, in the midst of trial, following the close of the prosecution's case in chief. In response to defendant's request, the trial court gave defendant two days to find an expert. Defendant was unable to procure an expert in that time and requested an additional week. The judge was unavailable the following week, such that a continuance would have required postponing the rest of the trial until November—a continuance of more than two weeks. In jury selection, jurors were told the trial would last ten days or less. A continuance, therefore, would have imposed a significant burden on the jurors and caused a substantial disruption in the proceedings. Accordingly, the trial court's denial was not arbitrary. (See *People v. Doolin, supra,* 45 Cal.4th at p. 450.)

Additionally, defendant did not exercise "due diligence" in attempting to secure an expert witness. (*Wilson*, *supra*, 36 Cal.4th at p. 352.) As the trial court observed, whether the officers used lawful force was a central issue in the trial, and the probative value of expert testimony was clear regardless of whether the prosecution introduced its own expert on the topic. Defense counsel should have anticipated the need for an expert long before the start of trial. The issue of whether the prosecution provided proper notice, therefore, has no bearing on whether defense counsel exercised due diligence.

Furthermore, defendant's claim that the denial violated his due process rights is not supported by the cases he cites. "The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that

_____

[4] Defendant cites no authority showing that the prosecution violated any rule of discovery or evidence by introducing Sergeant Day's expert testimony. As defendant concedes, the prosecution did not fail to turn over any report or statement made by Sergeant Day, and there is no rule explicitly requiring the prosecutor to provide pretrial notice of an expert. (See § 1054.1 [requiring the prosecutor to produce "any reports or statements of experts made in conjunction with the case [. . . .]"].)

violates due process even if the party fails to offer evidence or is compelled to defend without counsel. [Citation.] Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. [Citation.] There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." (*Ungar v. Sarafite* (1964) 376 U.S. 575, 589.) As explained above, given the prospect of a two-week delay and the lack of due diligence by trial counsel, the trial court's denial was not arbitrary, let alone so arbitrary as to violate due process. We find the trial court did not abuse its discretion in denying defendant's request for a continuance.

D. *Ineffective Assistance of Counsel*

Defendant's final contention is that his trial counsel provided ineffective assistance by failing to present an expert witness on the use of force, and by failing to request a pinpoint instruction on the proper use of a taser.[5] He also argues cumulative error arising out of these claimed errors. We find these claims without merit.

Defendant's claim that counsel should have presented an expert witness fails because he makes no showing of prejudice under *Strickland*. Defendant asserts, without citation, that "the defense expert would have provided a professional perspective on the unreasonableness of the use of force that no one else had offered the jury." But defendant presents no evidence or argument showing that the use of force was unlawful, or that an expert would have given such testimony. Even assuming an expert would have testified to that effect, defendant makes no showing that it was reasonably probable a jury would have credited such testimony in lieu of Sergeant Day's testimony. Because it is

---

[5] We consider trial counsel's failure to object to Sergeant Day's expert testimony above in Section B.

12

defendant's burden to show prejudice, *In re Hill*, *supra*, 198 Cal.App.4th at page 1016, his failure to show a reasonable likelihood of a more favorable outcome requires that we reject his claim.

Defendant also argues trial counsel should have requested a jury instruction that "[a]n officer's use of a Taser when a defendant is uncooperative but not a threat may constitute excessive force." To support this instruction, defendant cites to *Mendoza v. City of West Covina* (2012) 206 Cal.App.4th 702, 716 (*Mendoza*), and *Mattos v. Agarano* (9th Cir. 2011) 661 F.3d 433, 443-446, 449-451 (en banc) (*Mattos*). Both cases involved civil rights lawsuits brought against police for excessive use of force; neither concerned the use of lawful force underlying a criminal charge of resisting arrest.

Even assuming defendant's statement of the law is correct, he must demonstrate prejudice under *Strickland* stemming from a failure to request such an instruction. We do not find it reasonably likely that the jury would have reached a more favorable result had the trial court given the requested instruction. The record holds considerable evidence that defendant presented a threat to the officers. First, officers were aware that he had made violent threats towards his neighbors. In his initial encounter with police, he took an aggressive, combative stance. One officer estimated defendant was 6 feet 6 inches tall, weighing 275 pounds. Defendant admitted to Sergeant Day that he may have struck one of the officers in his attempt to escape into the house. One officer testified that defendant attacked them when he first came out of the house. The officer was struck or scratched in the face as defendant exited the house. Defendant continued to flail his arms and kick his legs as officers attempted to subdue him outside the house. Given this evidence, it is not reasonably likely the jury would have reached a more favorable outcome on the basis that defendant was not a threat to officers.

We note that the facts of this case are quite distinct from those in *Mendoza* and *Mattos*. In *Mendoza*, the plaintiff was not merely tased; he was pinned on his stomach and asphyxiated to death in police custody while handcuffed to a chair. In *Mattos*, the

13

Ninth Circuit Court of Appeals considered two consolidated cases. In one case, police tased a pregnant woman multiple times after she refused to get out of her car. In the other case, police tased the plaintiff during an attempt to arrest her husband. The woman who was tased did not immediately move out of the way. Instead, she extended her arm to prevent an advancing officer from smashing into her breasts. Neither of these cases involved facts showing the plaintiffs presented a threat to the police, as defendant did in this case. (*Mattos*, *supra*, at pp. 445-446, 450.)

Finally, defendant contends he was prejudiced by the cumulative effect of multiple errors. Having found no error, there is nothing to cumulate.

### DISPOSITION

The judgment is affirmed.

_____
MÁRQUEZ, J.

We concur:

_____
ELIA, J., ACTING P.J.

_____
BAMATTRE-MANOUKIAN, J.

14