[Crim. No. 11075. Fourth Dist., Div. One. Jan. 18, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
BENNET FRANK WHITE, Defendant and Appellant.

**COUNSEL**

Appellate Defenders, Inc., under appointment by the Court of Appeal, and Victoria Sleeth for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Jay M. Bloom and Jesus Rodriguez, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WIENER, J.**—Bennet Frank White (White) was charged with attempting to rescue a person from lawful custody (Pen. Code, § 4550; count 3; all statutory references are to the Penal Code unless otherwise specified), assault with a deadly weapon and by means of force likely to produce great bodily injury on a peace officer (§ 245, subd. (b); count 4), battery on a police officer (§§ 242, 243; count 5), and resisting arrest (§ 148; count 6). A jury found her guilty of counts 4 and 6 (§ 245, subd. (b) and § 148), and not guilty of the remaining counts. She appeals from the judgment of convictions.

We conclude the court's instructions failed to adequately inform the jury of the relationship between excessive force by the police officer in making the arrest on defendant's rights. The instructions should have included the explanation that where excessive force is used in making what otherwise is a technically lawful arrest, the arrest becomes unlawful and a defendant may not be convicted of an offense which requires the officer to be engaged in the performance of his duties (§§ 245, subd. (b), 243 or 148). A defendant may nevertheless be convicted of other crimes not including that element (§§ 245, subd. (a), 242 or 240). We also explain that when excessive force by the officer in making his arrest is used as the excuse for resistance by the defendant, the court is under a *sua sponte* duty to instruct on self-defense provided there is substantial evidence supportive of defendant's theory of defense. It is also necessary for the court to explain the limitation of defendant's duty not to resist either an unlawful or lawful arrest under section 834a[1] does not apply to a single charge of resisting arrest (§ 148). Because of these instructional errors we reverse the judgment. We also address defendant's evidentiary contentions for the guidance of the court upon retrial.

---

[1]Section 834a provides: "If a person has knowledge, or by the exercise of reasonable care, should have knowledge, that he is being arrested by a peace officer, it is the duty of such person to refrain from using force or any weapon to resist such arrest." (See fn. 2, par. 2, *infra*.)

*Facts*

On April 14, 1978, at approximately 3:30 p.m., White, Barbara Tai San Nicolas (San Nicolas) and Carmen Mills (Mills) entered the Fashion Conspiracy store in National City. They went to the rear of the store where San Nicolas selected some garments from the rack and entered the fitting room. When Ann Audet, the store manager, approached the fitting room area, defendant and Mills left the store. Audet saw San Nicolas conceal an item of clothing on her person and confronted her when she attempted to leave the store. The police were called when a struggle ensued.

After Officer Gonzalez arrived, he arrested San Nicolas. As he was escorting her to his police car, defendant shoved him from behind and told him he was not going to take San Nicolas to jail. Although he kept ordering her to stand back and stay out of the way, she continued to grab and push him. He then called for assistance via his portable police radio. Officers Ciolli and Bradshaw responded. Gonzalez told them to arrest defendant for interfering with his duties. They approached her and attempted to place her under arrest. She began to swing her arms, kick her feet and swear at them. She continued her resistance until she was eventually subdued, handcuffed and placed in the rear of Bradshaw's vehicle.

A large crowd had formed at the scene. The officers decided to remove defendant and San Nicolas from the area to prevent any type of confrontation with the crowd. Bradshaw started to transfer San Nicolas from Gonzalez' vehicle to his car. When he opened the door to his vehicle, defendant jumped out and began screaming. Officer Ciolli then intercepted her by grabbing her around the waist and attempted to place her back in the car. She responded by kicking him and twisting her shoulders. He tried to place a carotid restraint ("sleeper" hold) on her, but she spun around and bit him on the chest causing a laceration. They both fell to the ground. Ciolli tried another carotid restraint, but again failed. He then called his police dog, who responded and stood over defendant. She froze. Ciolli ordered the dog back in the car and placed defendant in Bradshaw's car. She then was taken to the police station.

*Instructional Error*

Among the general principles of law which were read to the jury in addition to the definition of each of the crimes of which defendant was

charged, including lesser included offenses, were section 830.1—the definition of a peace officer—and properly tailored CALJIC instructions No. 9.53, "Lawful Arrest—Defined," No. 9.54, "Mechanics of Arrest," and No. 9.55, "Use of Reasonable Force to Make Arrest —Duty to Submit."[2] Defendant argues that although these instructions were proper, they were incomplete for they failed to explain the relationship between excessive force in making the arrest and defendant's rights. They were also incomplete for they did not include any instruction on defendant's theory of self-defense. We discuss each separately.

### The Effect of the Failure to Explain the Use of Excessive Force in Making the Arrest on Defendant's Rights

Section 245, subdivision (b) makes it unlawful to assault an officer by means of force likely to produce great bodily injury. Section 148 makes it unlawful to resist an officer. ■ An essential element of both offenses is the officer at the time of the arrest must be engaged in the performance of his duties. If a defendant is charged with violating section 245, subdivision (b), and the arrest is factually determined to be unlawful, a defendant can be convicted only of a lesser included offense, i.e., section 245, subdivision (a) (assault by means of force likely to produce great bodily injury on a person other than a police officer or a police officer not in the performance of his duties). Likewise, if a defendant is charged with violating section 148 and the arrest is found to be unlawful, a defendant cannot be convicted of that section. (See generally *People* v. *Curtis* (1969) 70 Cal.2d 347, 354-356, 357, fn. 9 [74 Cal.Rptr. 713, 450 P.2d 33]; *People* v. *Moreno* (1973) 32 Cal.App.3d Supp. 1, 10-11 [108 Cal.Rptr. 338]; *People* v. *Cuevas* (1971) 16 Cal.App.3d 245, 251-253 [93 Cal.Rptr. 916]; *People* v. *Muniz* (1970) 4 Cal.App.3d 562, 567, 570 [84 Cal.Rptr. 501]; *People* v. *Soto* (1969) 276 Cal.App.2d 81, 85 [80 Cal.Rptr. 627].)

---

[2]CALJIC No. 9.55 as given was: "A peace officer who is making a lawful arrest may use reasonable force to make such arrest, or to prevent escape, or to overcome resistance. The officer need not retreat or desist from the officer's efforts by reason of the resistance or threatened resistance of the person being arrested.

"If a person has knowledge or by the exercise of reasonable care should have knowledge that that person is being arrested by a peace officer, it is the duty of such person to refrain from using force to resist such arrest whether the arrest is either lawful or unlawful unless unreasonable or excessive force is being used to make the arrest. [See fn. 1, *ante.*]

"A peace officer is not engaged in the performance of the officer's duties if the officer makes or attempts to make an unlawful arrest."

The word "unlawful" in defining arrest is typically applied where a defendant claims his arrest was lacking in probable cause. Accordingly, CALJIC instruction No. 9.53 defining lawful arrest is routinely given. There is no legal requirement, however, restricting unlawful arrest in the context of sections 245, subdivision (b), 243 and 148 to only those arrests which are accomplished without probable cause for an arrest made with excessive force is equally unlawful. "[I]t is a public offense for a peace officer to use unreasonable and excessive force in effecting an arrest (*Boyes* v. *Evans*, 14 Cal.App.2d 472 [58 P.2d 922])." (*People* v. *Soto, supra*, 276 Cal.App.2d at p. 85.) "That portion of section 243 of the Penal Code which raises battery, a misdemeanor, to felony status where the victim is a peace officer engaged in the performance of his duties, does not come into play where the officer makes an illegal arrest, simply because '[a]n officer is under no duty to make an unlawful arrest.' [Citation.] *It goes without saying, of course, that neither is it the duty of officers to taunt or beat persons arrested.*" (Italics added; *People* v. *Muniz, supra*, 4 Cal.App.3d 562, 567.) Thus, in the present case it became essential for the jury to be told that if they found the arrest was made with excessive force, the arrest was unlawful and they should find the defendant not guilty of those charges which required the officer to be lawfully engaged in the performance of his duties (§§ 245, subd. (b), 243 and 148).

### Failure to Instruct Sua Sponte on Self-Defense

■ Even in the absence of a request, a court is under an affirmative duty to give an instruction on defendant's theory of defense where "'...it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense....'" (*People* v. *Stewart* (1976) 16 Cal.3d 133, 140 [127 Cal.Rptr. 117, 544 P.2d 1317], quoting from *People* v. *Sedeno* (1974) 10 Cal.3d 703, 716 [112 Cal.Rptr. 1, 518 P.2d 913]; see also *People* v. *Freeman* (1978) 22 Cal.3d 434, 437 [149 Cal.Rptr. 396, 584 P.2d 533].)

Defendant testified that although she initially did not resist arrest, she did resist following her arrest by biting Officer Ciolli when he removed her from the patrol car and started to choke her. She stated she became frightened and panicked because of her inability to breathe and consequently turned around and bit him in order to make him release her. Eyewitness Era Cass corroborated defendant's account to the extent the officer removed her from the vehicle and started choking and

beating her which resulted in the struggle and the parties' falling to the ground. The court was aware of defendant's reliance upon self-defense as it related to the use of excessive force. During trial, in response to defense counsel's statement that excessive force employed by the police officers constituted an issue within the case, the trial judge responded: "I understand that. That defense [has] become rather patent to the jury, and you've had ample time on it." There was substantial evidence supportive of self-defense.

The court's instructions included CALJIC No. 9.55 (1973 rev.) (see fn. 2, *ante*), regarding the use of reasonable force to make an arrest and the duty of the person being arrested to refrain from using force to resist the arrest (see § 834a, *supra*). Here, because there was evidence of excessive force in making the arrest, the phrase "unless unreasonable or excessive force is being used to make the arrest" was properly given. (See use note, CALJIC No. 9.55 (1973 rev.) p. 405.) It then became a question for the jury to determine whether the officers used excessive force in arresting defendant. Once the use of excessive force by the officers became an issue, it was necessary to explain further that where an officer uses unreasonable or excessive force in making an arrest, the person arrested has the right to use reasonable force to protect himself. As discussed above, where the officer uses excessive force, the defendant cannot be guilty of sections 245, subdivision (b), 243 or 148 and where the jury finds reasonable force was properly used in self-defense, the defendant may not be convicted of any crime. (*People v. Soto, supra,* 276 Cal.App.2d at p. 85.) Only when excessive force is used by a defendant in response to excessive force by a police officer may the defendant be convicted, and then the crime may only be a violation of section 245, subdivision (a) or of a lesser necessarily included offense within that section. It is certainly logical to restrict the conviction to the lesser offense where defendant responds in kind to excessive force by a police officer for to hold otherwise effectively ignores the unlawful conduct of the officer and impliedly sanctions such behavior. A definition of reasonable force is also essential. (See CALJIC No. 5.30.)

■ Defendant also correctly points out the court erred in failing to instruct that section 834a—a duty not to resist arrest—does not apply to a charge of section 148. (*People v. Moreno, supra,* 32 Cal.App.3d Supp. 1, 9-11; *People v. Curtis, supra,* 70 Cal.2d 347, 354-355.) As we have stated, section 148 only applies to lawful arrests. When instructed as to section 834a in a case involving a single count of section 148, or

multiple counts where a different police officer is involved in the section 148 violation, the jury is given the opportunity to improperly infer defendant could be guilty of a crime upon resisting an unlawful arrest. A court should expressly limit the application of that section (§ 834a).[3]

### The Instructional Error Requires Reversal

The Attorney General argues that even if the trial court erred in failing to give all necessary instructions, the error was not prejudicial in light of the overwhelming evidence of defendant's guilt.

Admittedly, "a failure to instruct where there is a duty to do so can be cured if it is shown that 'the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions.' (*People* v. *Sedeno, supra,* 10 Cal.3d, at p. 721.)" (*People* v. *Stewart, supra,* 16 Cal.3d at p. 141.) Here, however, in view of the incompleteness of the instructions given relating to the unlawful arrest and the failure to give any instruction regarding defendant's combined proffered defense of excessive force and self-defense, we cannot conclude as a matter of law the jury understood the issues involved or resolved the self-defense issue adversely to defendant.

A defendant has the constitutional right to the determination of every material issue presented by the evidence; an erroneous failure to instruct on an affirmative defense relied upon by defendant constitutes in itself a miscarriage of justice; and such error cannot be cured by reweighing the evidence and concluding it not reasonably probable the jury, properly instructed, would not have convicted the defendant. (*People* v. *Stewart, supra,* 16 Cal.3d at p. 141.) The Attorney General's evidentiary "reasoning leads, if followed to its logical conclusion, to the abandonment of all instructions." (*People* v. *Haney* (1977) 75 Cal.

---

[3]Count 6 (§ 148) failed to name a specific officer as the victim. Under the circumstances of this case, the victim could have been either Gonzalez or Ciolli. The preferable practice is to allege in the information the specific officer whose lawful authority was resisted. If not so alleged, the jury must specifically be instructed as to the officer involved to assure a defendant, if convicted, that the jury has reached a unanimous verdict. Otherwise, some jurors could base their conclusions on defendant's conduct towards one officer with other jurors reaching their conclusion with reference to defendant's conduct in resisting a different officer. On retrial, this matter should be corrected.

App.3d 308, 312 [142 Cal.Rptr. 186].) Because of instructional errors, the judgment must be reversed.

*Evidentiary Considerations for Guidance of the Court Upon Retrial*

The trial court excluded (1) statements from the crowd witnessing defendant's arrest, (2) statements made by a specific spectator witness to another when observing the incident, and (3) testimony regarding the specific spectator's attempt to lodge a citizen's complaint regarding the incident with the National City Police Department. It concluded the statements were hearsay—offered for the truth of the matter asserted; were not spontaneous in nature; and, as lay opinion on whether the force employed was excessive, were entirely irrelevant. The court also excluded evidence of the ethnic composition of the crowd as being irrelevant.

(1) *Statements from the Crowd*: On cross-examination of Officer Ciolli, defense counsel attempted to elicit what statements the officer heard from the crowd witnessing the incident which made him testify the enclosing crowd was "abusive" and "hostile," "jeering" and "making comments." █ The unidentified bystanders' statements were relevant to the issues of excessive force and self-defense. The mood of the crowd as determined by the officers from hearing the statements was "a part of the total circumstances bearing upon the reasonableness of the actions taken and the force used by the officers." (*People v. Booher* (1971) 18 Cal.App.3d 331, 337 [95 Cal.Rptr. 857].) The evidence was nonhearsay, probative of the officer's state of mind relating to the reasonableness of his conduct under the circumstances and consequently admissible for impeachment purposes.

(2) *Out-of-Court Statements Made by a Spectator-Trial Witness to Another While Observing the Incident*: █ The trial court's exclusion of proffered statements made by witness Cass was not an abuse of discretion since the evidence was unnecessary and cumulative in nature. (Evid. Code, § 352; see *Kelley v. Russell* (1942) 50 Cal.App.2d 520, 533 [123 P.2d 606].) The witness thoroughly testified to the facts and circumstances surrounding the incident as she perceived them, and it was not necessary that she resort to opinion or conclusionary testimony.

(3) *Witness Cass' Attempt to Lodge a Citizen's Complaint Regarding the Incident with the National City Police Department*:

■ Although this evidence may well have been relevant, it constituted inadmissible hearsay which did not satisfy the spontaneous declaration exception due to its timeliness.

■ *Ethnic Composition of the Crowd*: Defendant sought to introduce evidence of the ethnic composition of the crowd in an effort to show the officers' use of excessive force was for the purpose of demonstrating to the crowd what to anticipate should they create any problems in the shopping center. ■ We concur with the court in concluding the proffered evidence of the ethnic makeup of the crowd was irrelevant.

*Disposition*[4]

The judgment is reversed.

Staniforth, Acting P. J., and Work, J.,* concurred.

---

[4]In light of our disposition, we do not address defendant's contentions pertaining to sentencing.

*Assigned by the Chairperson of the Judicial Council.