Filed 11/5/20  P. v. Mendivil CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GARY FRANK MENDIVIL et al.,<br><br>    Defendants and Appellants. | H044357<br>(Santa Clara County<br>Super. Ct. No. C1245430) |

Juries found defendants Adam Mendivil and Gary Mendivil guilty of felony resisting or deterring an executive officer, and Gary was found guilty of assault on a peace officer with means likely to produce great bodily injury.[1]  As to each defendant, the trial court suspended imposition of sentence and granted a three-year term of probation with one year in county jail.

Adam and Gary raise multiple claims of instructional error.  First, Gary contends the trial court erred by instructing the jury that voluntary intoxication is not a defense to aiding and abetting assault.  Second, he contends the trial court failed to instruct the jury that a defendant is not guilty of assault on a peace officer if the officer was using excessive force.  Alternatively, he contends the court's instructions impermissibly directed the jury's attention away from the collective impact of the excessive force used by multiple officers.  Finally, Gary contends the trial court erred by imposing fines and

---

[1] We refer to the defendants by their first names to avoid confusion.

fees without determining whether he had the ability to pay them under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).

Adam contends the trial court erred by failing to instruct the jury that the police were not engaged in the lawful performance of their duties if they were acting in a discriminatory fashion. Second, Adam contends the trial court erred by imposing fines and fees without determining whether he had the ability to pay them under *Dueñas*, *supra*.

For the reasons below, we conclude these claims are without merit and we affirm the judgments.

## I. Factual and Procedural Background

### A. Procedural Background

In 2014, the prosecution charged both Adam and Gary by information with felony resisting or deterring an executive officer. (Pen. Code, § 69.)[2] The information further charged Gary with assault on a peace officer with means likely to produce great bodily injury. (§ 245, subd. (c).) As to both defendants, the information alleged the offenses were committed for the benefit of, at the direction of, and in association with a criminal street gang. (§ 186.22, subds. (b)(1)(A) & (b)(1)(B).) As to Gary, the information alleged he had previously suffered a juvenile adjudication for assault with a deadly weapon or force likely to cause great bodily injury. (§§ 667, subds. (b)-(i), 1170.12.)

Defendants were tried twice. The first jury found Gary guilty of resisting or deterring an executive officer, but the jury hung on the assault charge and the gang allegations. The first jury also hung on the charges and allegations against Adam. The trial court declared a mistrial on those charges and allegations.

---

[2] Subsequent undesignated statutory references are to the Penal Code.

Defendants were tried again in 2016.  The second jury found Adam guilty of resisting an executive officer but found the gang allegation not true.  The jury found Gary guilty of assault on a peace officer but found the gang allegation not true.

As to each defendant, the trial court suspended imposition of sentence and granted a three-year term of probation with one year in county jail.

## B. Facts of the Offenses

The charges arose from a raucous birthday party at defendants' home in November 2012.  Around 10:30 p.m., a neighbor called 911 after hearing what sounded like gunfire at the party.  A group of about four to six police officers responded to the scene.  Police estimated there were more than 50 partygoers at the house.  The officers had been told the house was a "known Northern household and there had been many prior contacts there by the police."

When the police arrived, the partygoers who were in the front yard ran into the house, the back yard, or away down the street.  A police officer knocked on the front door of defendants' house, but nobody answered or opened the door.  Officers heard the occupants shouting derogatory remarks such as "fuck you" and "fuck the police."  Out of concern for their safety, the police decided not to enter the house or back yard, and instead moved to the street where they looked for blood trails and waited to see if any gunshot victims might appear.  In the street, officers observed two cars with expired registrations.  One of the cars belonged to Adam, and the registration had been expired for more than six months.  Police ordered a truck to tow the cars, and when the truck arrived, officers stood by the truck as it prepared to tow Adam's car.

At that point, Adam came out of the house "at a fast walk" with his fists clenched and approached the police in an aggressive manner.  He stated, "You ain't taking my car," and used foul language.  One of the officers drew his gun and ordered Adam to get back and go back into the house, but Adam refused to comply.  Other officers ordered Adam to get back, but he continued to approach.  He then took up a fighting stance and

3

stood between his car and the ramp of the tow truck. He was agitated, yelling, and "his chest was puffed." He did not have any weapons in his hand. At some point, Adam may have jumped onto the ramp of the tow truck.

Four or five officers formed a circle around Adam, and one of the officers attempted to grab Adam's hand to take him into custody for obstruction and resisting arrest. Adam grabbed the officer's hand and bent the officer's fingers back, causing him pain. Multiple officers then attempted to subdue Adam, and another officer hit him three times with the butt of a baton. But the officers could not contain Adam. He escaped from them and ran back into the front yard.

Officer Scott Berget was one of the officers who had tried to grab Adam by the truck. When Adam got away from them, Officer Berget ran into the yard after him to try to make the arrest. Officer Berget yelled at Adam to stop and get on the ground, but Adam did not do so. In the front yard, Adam stopped, turned around, and took up a fighting stance towards Officer Berget. Officer Berget took out his baton and struck Adam in the left thigh area. Adam fell to the ground, tried to crawl away, and started yelling for help.

A crowd of around five to 20 people came out from the house and the back yard area. People started throwing bottles and other items at the police. Among other objects, people threw paint cans, chunks of cement, and gardening tools like a pickaxe and pruners. One officer recalled a car alternator landing near him.

Officer Berget was attempting to handcuff Adam on the lawn when two males started walking aggressively and directly at the officer. Officer Berget did not see any weapons or bottles in their hands, but both men were bigger than him. One of the two males—identified as Gary—stated, "You're not taking my [fuckin'] brother." The two men got in between Adam and Officer Berget, such that Adam was behind the two men. Officer Berget swung his baton and hit one of the men—not Gary or Adam—in the neck or shoulder area. The man either backed up or fell down.

4

Officer Berget then took a step back himself, whereupon he was hit in the nose with a full beer bottle. He dropped to one knee and "things went black" for three to five seconds. He could feel blood coming down his nose. At that point, he felt a weight on his back and realized that somebody had jumped on top of him. He could feel someone punching and kicking him as well.

Another officer who saw the attack testified that a man was directly on top of Officer Berget, using his body weight to hold Officer Berget to the ground while kicking him in the back of the head and side of the face. The officer approached and struck the man on the head with a baton, whereupon the man fell off Officer Berget's back. At that point, the officer turned his attention to other people in the crowd, one of whom grabbed the officer's baton.

After the weight was removed from his back, Officer Berget was able to get to a standing position, but he was bent over at the waist. There were two men grabbing on to either side of him, and he could feel pressure on his duty belt and gun. He felt himself being dragged towards the backyard gate. He could also feel somebody yanking on his gun, so he tried to cover it up. Eventually he broke free and made his way back to the street. He identified one of the two men who had grabbed him as Gary Mendivil. Gary had been on the non-gun side of Officer Berget. He was missing a full magazine of bullets from his duty belt.

After the police deployed pepper spray and tasers on the crowd, the partygoers retreated into the house or ran away onto neighboring properties. Adam's mother testified that he had suffered a broken nose, his eyes were purple, his nose was swollen, and he had bruises and swelling on his arm and knee.

## II. DISCUSSION

### A. *Jury Instructions on Voluntary Intoxication*

Gary contends the trial court erred by instructing the jury that voluntary intoxication is not a defense to the assault charges. He concedes that voluntary

intoxication is not a defense to assault itself, but he argues the trial court erred because the jury was instructed on aiding and abetting, and voluntary intoxication is a defense to aiding and abetting assault. The Attorney General argues that Gary forfeited this claim because defense counsel did not object or request any such instruction. The Attorney General further argues that the trial court properly instructed the jury, and that any error was harmless. Gary argues that the trial court had a sua sponte duty to instruct the jury correctly, and that no objection was necessary to preserve the claim for appeal.

### 1. *Legal Principles*

Because assault is a general intent crime, "juries should not 'consider evidence of defendant's intoxication in determining whether he committed assault.' [Citation.]" (*People v. Williams* (2001) 26 Cal.4th 779, 788.) Aiding and abetting, however, requires specific intent, and voluntary intoxication is therefore a defense against it. "*Awareness* of the direct perpetrator's purpose is critical for the alleged aider and abettor to be culpable for that perpetrator's act. A person may lack such awareness for many reasons, including intoxication. A person who is actually unaware that his or her noncriminal act might help another person commit a crime should not be deemed guilty of that crime and all of its reasonably foreseeable consequences even if intoxication contributes to, or is the sole reason for, that lack of awareness." (*People v. Mendoza* (1998) 18 Cal.4th 1114, 1129.)

We apply the de novo standard of review to a claim of erroneous jury instructions. (*People v. Posey* (2004) 32 Cal.4th 193, 218 (*Posey*).) In reviewing an ambiguous instruction, we ask whether there is a reasonable likelihood the jury applied the challenged instruction in a way that violates the Constitution. (*People v. Pettie* (2017) 16 Cal.App.5th 23, 60.) The correctness of jury instructions is determined by looking at the context of the entire charge, not by considering only part of an instruction or a particular instruction in isolation. (*People v. Salazar* (2016) 63 Cal.4th 214, 248.)

6

## 2. *Procedural Background*

The prosecution charged Gary with assault on a peace officer with means likely to produce great bodily injury. (§ 245, subd. (c).) The trial court instructed jurors it could find Gary guilty as a perpetrator if he directly committed the assault, or as an aider and abettor if he aided and abetted others as part of a group assault. The court stated, "Gary Mendivil is charged in Count 3 with assault on a peace officer with force likely to produce great bodily injury on Officer [Berget]. If you determine that the evidence showed that Gary Mendivil was part of a group assault upon Officer [Berget], you may consider whether Gary Mendivil, during his assault upon Officer [Berget], aided and abetted the actions of other participants in that group assault. You may not consider whether Gary Mendivil aided and abetted the actions of other persons before his participation in a group assault." The court instructed jurors on the principles of aiding and abetting using CALCRIM Nos. 400 and 401. Using CALCRIM No. 860, the court instructed jurors on the elements of assault on a peace officer with means likely to produce great bodily injury. These instructions said nothing about voluntary intoxication.

The court then instructed jurors that they could convict Gary of the lesser included offenses of assault on a person with force likely to produce great bodily injury (§ 245, subd. (a)(4)) and misdemeanor simple assault (§ 240). The court based these instructions on CALCRIM Nos. 875 and 915, respectively. Nothing in these instructions told the jury it could convict Gary of aiding and abetting the lesser included offenses. As part of these instructions, the court instructed the jury twice—once for each offense—that "[v]oluntary intoxication is not a defense to assault."[3] Defense counsel did not object to either instruction, and did not request any additional instructions or modifications.

---

[3] The court instructed the jury similarly on the charges against Adam.

7

### 3. *The Trial Court Did Not Err Prejudicially*

Gary argues his failure to object did not forfeit the claim on appeal because the trial court had a sua sponte duty to instruct the jury correctly on the law, and his rights were substantially affected by the court's failure to do so.  (See *People v. Rogers* (2006) 39 Cal.4th 826, 850, fn. 7 [claim of failure to instruct sua sponte not forfeited on appeal]; § 1259 [an appellate court may review any instruction given, even though no objection was made, if the substantial rights of the defendant were affected].)  We agree and will consider the merits of the claim.

The Attorney General contends the trial court's instructions on voluntary intoxication applied solely to the lesser included offenses, and that the instructions on aiding and abetting applied solely to the charged offense.  Therefore, the Attorney General argues, nothing in the instructions precluded the jury from considering whether Gary was too intoxicated to form the intent required for aiding and abetting the charged offense.  Gary contends the jury could have been confused because the instructions on voluntary intoxication were not explicitly limited to the lesser included offenses or liability for the charged assault as a direct perpetrator.

We agree with the Attorney General that it is not reasonably likely the jury misapplied the instructions in the manner that Gary asserts it did.  The trial court's instructions to the jury on voluntary intoxication were only given in conjunction with the instructions on the lesser included offenses.  Nothing in the instructions on the lesser included offenses would have allowed the jury to convict Gary of aiding and abetting those offenses.  To the contrary, the instructions on aiding and abetting were expressly limited to the assault on a peace officer (i.e., Officer Berget).

Even assuming a jury could have misinterpreted the instructions as Gary asserts, there is no reasonable likelihood the jury here actually did so in finding him guilty.  First, defense counsel never argued Gary lacked the requisite intent based on intoxication.  To

8

the contrary, counsel's theory was that Gary was acting in self-defense of his brother. Gary's counsel argued in closing, "His motivation was solely to defend his brother."

Second, there was no evidence in the record that Gary was intoxicated, so no reasonable jury could have found he lacked the requisite intent due to intoxication. Gary points out that the prosecutor argued in closing that the police were attacked by a "drunken mob," but an attorney's arguments do not constitute evidence, and there was no evidence or indication that Gary himself was intoxicated. Beyond a reasonable doubt, there is no chance the jury would have reached an outcome more favorable to Gary in the absence of any assumed error. Any error was therefore harmless under either the federal or state law standard for prejudice. (*Chapman v. California* (1967) 386 U.S. 18, 24) [federal constitutional standard requires prosecution to prove beyond a reasonable doubt that error did not contribute to verdict]; (*People v. Watson* (1956) 46 Cal.2d 818, 836.) [state law standard requires defendant to show a reasonable probability of a more favorable outcome in the absence of the error.]

For the reasons above, we conclude this claim is without merit.

### B. *Jury Instructions on Assault*

The jury found Gary guilty of assaulting Officer Berget with means likely to produce great bodily injury. (§ 245, subd. (c).) Gary contends the trial court erroneously instructed the jury on the elements of that offense because it failed to inform the jury that an officer who is using excessive force is not engaged in the "lawful performance" of his or her duties. The Attorney General contends Gary forfeited this claim by failing to object below, and that the trial court correctly instructed the jury regardless.

#### 1. *Legal Principles*

To convict a defendant of assault on a peace officer, the prosecution must show the officer was engaged in the lawful performance of his or her duties at the time the defendant acted. (§ 245, subd. (c).) However, "when an officer uses excessive force in making an arrest or a detention, the officer is not engaged in the lawful performance of

9

his or her duties." (*People v. Williams* (2018) 26 Cal.App.5th 71, 73.) Therefore, if the officer was using excessive force at the time when the defendant acted, the defendant is not guilty of assault on the officer under subdivision (c) of section 245. (*People v. Olguin* (1981) 119 Cal.App.3d 39 (*Olguin*); *People v. White* (1980) 101 Cal.App.3d 161 (*White*).) "[W]here excessive force is used in making what otherwise is a technically lawful arrest, the arrest becomes unlawful and a defendant may not be convicted of an offense which requires the officer to be engaged in the performance of his duties." (*White,* at p. 164.) Under these circumstances, however, the defendant may still be guilty of the lesser included assault charge that does not include the element that the victim is a peace officer. (*Ibid.*) Even then, if the defendant was using reasonable force in protecting himself or herself, he or she is not guilty of this lesser included assault charge. (*Id.* at p. 166; *Olguin,* at p. 47.)

We review the correctness of jury instructions de novo. (*Posey, supra,* 32 Cal.4th at p. 218.)

### 2. Background

Using CALCRIM No. 2672, the trial court instructed the jury that Gary was not guilty of the assault on a peace officer under section 245(c) "if the officer was not lawfully performing his duties because he was unlawfully arresting someone." The court further instructed, "However, even if the arrest was unlawful, as long as the officer used only reasonable force to accomplish the arrest, the defendant Gary Mendivil may be guilty of the lesser crime of Penal Code section 245(a)(1), assault with force likely to produce great bodily injury. [¶] On the other hand, if the officer used unreasonable or excessive force and the defendant Gary Mendivil used only reasonable force in self-defense or defense of another, the defendant Gary Mendivil is not guilty of the lesser crime of Penal Code section 245(a)(1), assault with force likely to produce great bodily injury. [. . . ¶ . . .] The People have the burden of proving beyond a reasonable doubt that the officer was lawfully performing his duties. [¶] If the People have not met this

10

burden, you must find the defendant Gary Mendivil is not guilty of Penal Code section 245(c), assault on a peace officer by means likely to produce great bodily injury[.]"[4]

Counsel for Gary did not object and did not request and modification or additional instructions.

### 3. Any Instructional Error on Assault Was Harmless

Gary argues the trial court erred by failing to instruct the jury that an officer using excessive force is not lawfully performing his or her duties—a condition that made him not guilty of assaulting an officer. The Attorney General contends first that Gary forfeited this claim by failing to object or request any modification to the instructions. "Even in the absence of a request, a court is under an affirmative duty to give an instruction on defendant's theory of defense where ' ". . . it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense . . . ." ' [Citation.]" (*White, supra,* 101 Cal.App.3d at p. 167.) As part of their defenses, both Adam and Gary argued the police acted unlawfully and used excessive force. Accordingly, we will consider the merits of the claim.

We agree with Gary that under *White* and *Olguin* the trial court should have instructed the jury that an officer using excessive force is not acting within the lawful scope of his or her duties. Those cases establish that the trial court has a sua sponte duty to do so when the defense relies on such a theory. (*White*, *supra*, 101 Cal.App.3d at p. 167.) It was error for the trial court not to do so here, where Gary argued he was defending his brother against the use of excessive force.

The Attorney General argues that phrase "even if the arrest was unlawful" in the latter part of the instruction concerning subdivision (a)(1) implies the use of excessive

---

[4] Although the trial court referenced subdivision (a)(1) of section 245, the portion of that section defining assault by means of force likely to produce great bodily injury had been renumbered as subdivision (a)(4) in 2012. (§ 245, subd. (a)(4), as amended by stats. 2011, ch. 183, § 1.) The error is immaterial.

11

force would preclude conviction under subdivision (c). The Attorney General argues that read as a whole, "the instruction provides an analytical hierarchy of elements to determine the conviction." It is not clear the jury would have drawn such an inference, and in any event, jurors should not be charged with inferring an analytical hierarchy of elements based on a trial court's instructions absent any express language to that effect.

Gary contends that this instructional error requires automatic reversal because it removed an element of the offense from the jury's consideration. (See *People v. Talamantez* (1985) 169 Cal.App.3d 443, 458; *White*, *supra*, 101 Cal.App.3d at p. 169 [failure to define an element is per se prejudicial].) As the Attorney General points out, the California Supreme Court has since clarified that the automatic prejudice standard does not apply in this situation. (*People v. Flood* (1998) 18 Cal.4th 470.) It is still unclear, however, whether the state law standard for prejudice or the federal constitutional standard applies. (*People v. Salas* (2006) 37 Cal.4th 967, 984.)

Under the state law standard, the defendant must show a reasonable probability of a more favorable outcome in the absence of the error. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) Under the federal constitutional standard, the prosecution has the burden to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. (*Chapman v. California* (1967) 386 U.S. 18, 24.) We conclude the error was harmless under either standard.

Police officers are empowered to use a reasonable degree of force when necessary to effect an arrest. (§ 835.) "The use of excessive force by law enforcement officers is analyzed under the Fourth Amendment's objective reasonableness requirement for a seizure of the person." (*People v. Brown* (2016) 245 Cal.App.4th 140, 157 [citing *Graham v. Connor* (1989) 490 U.S. 386 (*Graham*)].) Under *Graham*, the question is "whether the amount of force the officers used in making the arrest was objectively unreasonable given the circumstances they faced." (*Allgoewer v. City of Tracy* (2012) 207 Cal.App.4th 755, 763.)

12

The evidence overwhelmingly established that Officer Berget was attempting to arrest Adam after he interfered with the lawful impoundment of his vehicle, violating section 148. Officer Berget was therefore legally empowered to use a reasonable and necessary amount of force to arrest Adam. The evidence showed Adam injured an officer in evading arrest—bending the officer's fingers back when the officer attempted to arrest him—whereupon Adam ran into the yard and Officer Berget pursued him. Officer Berget yelled at Adam to stop and get on the ground, but Adam did not do so. Instead, he turned around and took up a fighting stance toward Officer Berget. At that point, Officer Berget struck Adam in the leg with a baton and attempted to arrest him, whereupon Adam called out for help and multiple partygoers entered the fray.

Multiple officers reported that the crowd was throwing bottles, garden tools, chunks of cement, and other dangerous objects at the police. At this point, Gary and another man intervened on Adam's behalf. The two men directly approached Officer Berget and interfered with his arrest of Adam. After Officer Berget struck one of the men with a baton, Officer Berget was struck in the face with a full beer bottle, and the two men attacked him. For the remainder of the incident, he was occupied with extracting himself from the melee and preventing the two men from taking his firearm.

Given these circumstances, there is no evidence in this record that any reasonable jury could rely on to conclude that Officer Berget used excessive force. We conclude that overwhelming evidence showed the instructional error in this regard was harmless beyond a reasonable doubt.

In the alternative, Gary contends the trial court's instruction on lawful performance "impermissibly directed the jury away from the collective impact of the force used by multiple officers and away from the most extreme instances of force" used by other officers. The Attorney General notes that the specific instruction which Gary challenges in this part of his brief (CALCRIM No. 2670) applied solely to the charges

13

against Adam.  The Attorney General is correct.  Accordingly, Gary has no standing to challenge this instruction.[5]

For the reasons above, we conclude these claims are without merit.

## C. *Jury Instructions on Resisting an Officer*

The jury found Adam guilty of felony resisting an executive officer in the performance of his duties.  (§ 69.)  Adam contends the trial court erred by failing to instruct the jury that the police officer was not lawfully performing his duties if he was acting in a discriminatory fashion.  He argues that the jury could have found the police were acting unlawfully by towing his vehicle because the officers felt they were treated disrespectfully by the occupants of defendants' house.  He further contends the trial court's instructions effectively instructed the jurors that the police were acting lawfully as a matter of law because the instructions prohibited the jury from considering whether the officers were enforcing the law in a discriminatory fashion.  The Attorney General contends Adam forfeited these claims, and that the trial court properly instructed the jury on the relevant law.

### 1. *Legal Principles*

"[A] defendant cannot be convicted of an offense against a peace officer ' "*engaged in ... the performance of ...* [his or her] *duties*" ' unless the officer was acting lawfully at the time the offense against the officer was committed.  [Citation.]  'The rule flows from the premise that because an officer has no duty to take illegal action, he or she is not engaged in "duties," for purposes of an offense defined in such terms, if the officer's conduct is unlawful.... [¶] ... [T]he lawfulness of the victim's conduct forms part of the corpus delicti of the offense.'  [Citation.]"  (*In re Manuel G.* (1997) 16 Cal.4th 805,

---

[5] In his reply brief, Gary contends this argument applies to his conviction in the first trial for violating section 69.  That is not the argument he presented in his opening brief; in his opening brief, this argument pertained solely to his conviction under section 245.  We will not consider a claim raised for the first time in a party's reply brief.

815.)  This applies to the offense of resisting an officer as under section 69.  (*Ibid.*)

"Disputed facts relating to the question whether the officer was acting lawfully are for the jury to determine when such an offense is charged."  (*People v. Jenkins* (2000) 22 Cal.4th 900, 1020.)  We review the correctness of jury instructions de novo.  (*Posey, supra,* 32 Cal.4th at p. 218.)

To establish a claim of discriminatory enforcement, the defendant must prove: (1) that he or she has been deliberately singled out for prosecution on the basis of some invidious criterion; and (2) that the prosecution would not have been pursued except for the discriminatory design of the prosecuting authorities.  (*Baluyut v. Superior Court* (1996) 12 Cal.4th 826, 832 (*Baluyut*).)  "There must be discrimination and that discrimination must be intentional and unjustified and thus 'invidious' because it is *unrelated to legitimate law enforcement objectives*, but the intent need not be to 'punish' the defendant for membership in a protected class or for the defendant's exercise of protected rights."  (*Id.* at p. 833, italics added.)  When there is no legitimate law enforcement purpose for singling out persons for prosecution, the prosecution is arbitrary and unjustified and thus results in invidious discrimination.  (*Id.* at p. 835.)

### 2.  *Procedural Background*

The trial court instructed the jury based on CALCRIM No. 2652 as follows:  "To prove that the defendant is guilty of this crime, the People must prove, that, one, the defendant unlawfully used force or violence to resist an executive officer; two, when the defendant acted, the officer was performing his lawful duty; and three, when the defendant acted, he knew the executive officer was performing his duty.  [¶]  An executive officer is a government official who may use his or her own discretion in performing his or her job duties."  The court added, "The duties of a police officer include enforcing Vehicle Code violations and arresting people for crimes.  [¶]  [. . .]  [A] peace officer is not lawfully performing his or her duties if he or she is unlawfully

15

arresting or detaining someone or using unreasonable or excessive force in his or her duties."

Counsel for Adam did not object or request any additions or modifications to these instructions.

### 3. *The Trial Court Properly Instructed the Jury on Resisting a Peace Officer*

Adam argues the trial court had a sua sponte duty to instruct the jury that police officers do not act lawfully if they enforce the law in a discriminatory fashion. He argues that the instruction was required because the police arranged to tow his car for the purpose of retaliating against the people in the house after the partygoers were disrespectful to the police and refused to cooperate.

We are not persuaded. The record established that the registration on Adam's car had expired almost a year before the incident. A registration application was in process but still incomplete because the owner had not fully paid the registration fees or had failed to supply a smog certification. The police testified that some officers would choose not to tow a vehicle if the registration application was in process but it is "ultimately the decision of the officer. As long as he falls within the vehicle code, he can tow whatever vehicle he wants."

Adam does not contend that police discriminated against him based on his membership in any protected class. To support his claim that the police acted unlawfully, Adam points to the testimony of Officer Jason Cook. When asked if police had the discretion not to tow a vehicle when the registration application is in progress, Officer Cook answered affirmatively: "Yeah. If the owner comes out and he is approaching me and shows me documentation, I have a temporary registration. If I didn't see it on the car or something, I can point it out and I say, okay, pull it in your driveway, pull it off the street." He then testified that he chose not to be lenient because he "wasn't approached in a civil manner" after Adam came out of the house and "appeared to want to fight."

16

Adam also argues the police did not attempt to tow another vehicle nearby that also had an expired registration.

Assuming the police declined to exercise their discretion in Adam's favor when he was rude and aggressive, or decided to tow his car because the persons attending the party at his home were disrespectful, the officers' decision was not based on the kind of "invidious criterion" required to show discriminatory enforcement. (*Baluyut*, *supra*, 12 Cal.4th at p. 832.) "The defect lies in the denial of equal protection to persons who are singled out for a prosecution that is 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' (*Oyler v. Boles* (1962) 368 U.S. 448, 456.)" (*Ibid.*) The record shows the police had the lawful power to impound Adam's car. (Veh. Code, § 4000, subd. (a).) Nothing in the record suggests that the police decided to tow Adam's car because he was engaging in an activity protected by the equal protection clause, or because he belonged to a protected class. Towing the car was therefore not invidious because it was not "unrelated to legitimate law enforcement objectives." (*Baluyut*, *supra*, 12 Cal.4th at p. 833, italics omitted.)

Adam briefly contends the trial court effectively instructed the jury that the police were acting lawfully as a matter of law by instructing the jurors, "The duties of a police officer include enforcing Vehicle Code violations and arresting people for crimes." This instruction, referring to police officers generally, states an uncontroverted principle of law. No reasonable juror could have interpreted it to mean that the police officers *in this case* were acting lawfully as a matter of law.

We conclude these claims are without merit.

### D. Imposition of Fines and Fees

Both defendants contend the trial court erred by imposing fines and fees without determining whether they had the ability to pay them. (See *Dueñas*, *supra*, 30 Cal.App.5th 1157 [imposition of certain fines and fees without determining defendant's ability to pay was a violation of due process].) The Attorney General contends they

forfeited this claim by failing to request a hearing below; that *Dueñas* was incorrect on the merits; and that nothing in the record shows the defendants lacked the ability to pay.

### 1. *Background*

The trial court imposed a court operations assessment of $80 on Gary Mendivil and $40 on Adam Mendivil (§ 1465.8); a court facilities assessment of $60 on Gary and $30 on Adam Mendivil (Gov. Code, § 70373); a criminal justice administration fee of $129.75 on both defendants (Gov. Code, § 29550.1); a probation investigation fee of $450 on both defendants (§ 1203.1b); a probation supervision fee of $110 on both defendants (§ 1203.1b); the minimum restitution fine of $240 on both defendants (§ 1202.4, subd. (a)(1)); and a probation revocation restitution fine of $240 on both defendants (§ 1204.44).

At the sentencing hearing for Adam, the court stated, "The defendant is ordered to complete under penalty of perjury a 'statement of assets' to determine his ability to pay the fines and fees as ordered by the court.  [¶]  The defendant is entitled to a hearing if he believes the court's imposition of fines and fees are inappropriate.  [¶]  The defendant is ordered to report to the Department of Revenue within 30 days of his release for completion of a payment plan for fines and fees and a determination of his ability to pay fines and fees."  The court made a substantially identical statement at Gary's sentencing hearing.

Neither defendant objected, and neither requested a hearing on their ability to pay.

### 2. *The Trial Court Did Not Err by Imposing Fines and Fees*

The Attorney General contends defendants forfeited this claim by failing to object or request a hearing on their ability to pay in the trial court.  Defendants contend the claim was not forfeited because *Dueñas* was only decided during the pendency of the appeal, long after the fines and fees were imposed.  They argue any objection therefore would have been futile.

18

California courts of appeal have split on the issue of whether a claim under *Dueñas* is forfeited on appeal when the fines and fees were imposed before that opinion was issued. (See *People v. Santos* (2019) 38 Cal.App.5th 923 [defendant did not forfeit claim]; *People v. Frandsen* (2019) 33 Cal.App.5th 1126 [defendant forfeited claim].) Here, however, the trial court expressly notified both defendants of their right to a hearing on ability to pay and ordered them to submit statements of their assets to support such a determination. No such statements appear in the record. On this record, we cannot say it would have been futile for the defendants to request a hearing or to assert their inability to pay.

Assuming the defendants did not forfeit this claim, however, the record shows they had the ability to pay the fines and fees imposed here. Gary posted bail in the amount of $100,000 with a $10,000 bond premium. Adam posted bail in the amount of $50,000 with a $5,000 bond premium. Gary reported to probation that he had been employed as a landscaper and mover before the offense, and he planned to attend culinary school to work as a cook. Adam worked as a mover and a forklift operator prior to the offense, and he was working as a full-time warehouse supervisor prior to sentencing. He told probation he planned to work as a truck driver for a moving business, and he indicated his prior employer would hire him. In *Dueñas*, by contrast, the defendant was an indigent mother of two children receiving $350 in monthly cash benefits and $649 in food stamps. (*Dueñas, supra,* 30 Cal.App.5th at p. 1157.) Dueñas had no home, no bank account, no credit, and she suffered from cerebral palsy. There is nothing in the record here to show the defendants were in comparable financial straits.

For the reasons above, we conclude these claims are without merit. We will affirm the judgments.

### III.    DISPOSITION

The judgments are affirmed.

19

                                        _____

                                          Greenwood, P.J.

WE CONCUR:

_____
 Bamattre-Manoukian, J.

_____
 Grover, J.

People v. Mendivil, et al
No. H044357