Filed 4/1/21  In re A.M. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re A.M., a Person Coming Under the Juvenile Court Law. | C090016 |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.M.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. JV139601, 52008770) |

Following a contested jurisdictional hearing, the juvenile court found the minor, A.M., committed battery against a peace officer (Pen. Code, § 243, subd. (b)),[1] battery against a school employee (§ 243.6), and other offenses.  On appeal, A.M. contends there was insufficient evidence of battery.  We disagree and affirm.

---

[1] Further undesignated statutory references are to the Penal Code.

# I. BACKGROUND

A March 2019 Welfare and Institutions Code section 602 petition (petition) alleged that A.M. committed four misdemeanors at a high school when she was 14 years old: possession of a controlled substance (Health & Saf. Code, § 11375, subd. (b)(2)); battery against a peace officer (§ 243, subd. (b)); resisting, obstructing, or delaying a peace officer (§ 148, subd. (a)(1)); and battery against a school employee (§ 243.6). A.M., the peace officer, and the school employee all testified at the contested jurisdictional hearing, and footage from the peace officer's body camera was admitted into evidence.

## A. *Peace Officer*

The peace officer, a member of the Rocklin Police Department, testified that on September 17, 2018, while responding to a high school's request for assistance (and wearing a uniform which had "the full markings, with the badge and patches" reflecting his status) he was "told that there was another student that possibly was under the influence of something."

The officer turned his attention to A.M. and noted that her demeanor was "consistent with being under the influence of something." But he was unable to confirm his observations because A.M. "was defiant" and called her mother. While on speaker phone, A.M.'s mother was "confrontational" with the officer, saying at one point that the officer was "fuckin' ridiculous."

While waiting for A.M.'s mother to come to the school, A.M. refused to surrender her phone to school staff and called the officer a "bitch." The officer responded: "Watch the language. I'm not . . . addressing you that way so please be polite." During that same conversation, after the officer told A.M. that she was being "defiant," she replied, "I'm being defiant because you guys are accusing me of shit and I already have anger issues."

When A.M.'s mother arrived, a school employee explained that A.M. would be suspended for "being under the influence." A.M.'s mother was "not receptive" to the information. She cursed at the school employee, and—as she walked through the school's administrative office area—caused a "crashing sound" and made something "fly[] off of the counter where . . . the receptionist or secretary was sitting."

Concerned that A.M.'s mother may have committed "vandalism" and "assault and/or battery" the officer followed A.M.'s mother to the school parking lot so that he could "conduct a criminal investigation."

The officer's body camera footage reflects that the officer confronted A.M.'s mother in the parking lot and told her that "what [she] did was not right." A.M.'s mother can be heard speaking into her cell phone, telling A.M. to come to her immediately. The officer tells A.M.'s mother: "I'm not here to arrest you. I'm here to talk to you because, I don't know—. That's not okay to do. I don't know if anything's broken or anyone's hurt." A.M.'s mother does not respond to the officer.

A.M. joined her mother and the officer in the parking lot.

When it appeared to the officer that A.M.'s mother "was going to try and get inside . . . [a] vehicle," he "grabbed the back of" her "sweat shirt to stop her." A.M.'s mother "was not cooperating," and the officer feared she might head-butt him, so he put his forearm underneath A.M.'s mother's chin "to restrain her head so that [he] wouldn't be head-butted as [he] was trying to get her hands behind her back to put handcuffs on." A.M.'s mother repeatedly refused the officer's instructions to put her hands behind her back.

While the officer was telling her to put her hands behind her back, A.M.'s mother can be heard in the body camera footage screaming "I didn't do anything"; "[y]ou're choking me"; "[l]et me go"; and "I can't breathe."

The footage does not show where the officer's arm was in relation to A.M.'s mother's neck.

3

As the officer struggled with A.M.'s mother, A.M. said, "[d]on't touch my mom like that" and, "[s]he's not even fuckin doing anything. Let her the fuck . . . go dick." The officer testified that, at some point, A.M. "reached around and hit" his arm, which, "a day or two later," had "bruising . . . in the area where [he] was hit."

B.    *School Employee*

After a school employee heard a "loud crash . . . outside the door" of an office she was in, she followed the officer and A.M.'s mother out of the school's administrative area "to make sure that everything was okay." The school employee saw A.M. moving towards the officer in the parking lot and "stepped in between" the officer and A.M., who "became belligerent," "mad[e] statements of what she wanted to do physically to" the school employee, and "shove[d]" the employee with both hands, pushing her back "[a] few steps."

On cross-examination, the school employee said she didn't know if A.M. just "wanted to get to her mom or whether she wanted to hurt" the employee.

During an interview with an officer immediately after the incident, the school employee said that A.M. was trying to get to her mother, not assault her.

Footage from the officer's body camera reflects the school employee's presence on the scene (standing between A.M. and the officer and A.M.'s mother), and A.M. can be seen pushing the employee moments before she says, "[b]itch stop," "I'll slap the fuck outta you."

C.    *A.M.*

A.M.'s mother called A.M.'s cell phone and told A.M. to come to their car in the parking lot because "she was going to get arrested." When A.M. got to the parking lot, she saw the officer "grab[]" her mother "by her neck." A.M. thought her mom was choking. A.M.'s father died during an altercation with police not long before the incident at issue here, and seeing her mother struggle with the officer, A.M. feared she would "lose [her] mom the way [she] lost [her] dad." A.M. "wanted to protect her" mother, and

4

she pushed the school employee "[b]ecause she was . . . trying to keep [A.M.] away from [her] mom."

A.M. denied hitting the officer on the arm.

On cross-examination, A.M. said she did not hear her mom say "no," when the officer ordered her to put her hands behind her back, but she did hear her mother: ask for help; tell the officer, "I didn't do anything"; and say "he is choking me," and "I am going to puke."

During closing arguments, counsel for A.M. argued the People did not prove that A.M. "was not acting in defense of her mother" vis-à-vis the allegation of battery of a peace officer. "As far as [A.M.] knew, her mother was being choked. [¶] The mother was making sounds that she was being choked. She was calling for help. [A.M.] had just lost her father . . . she believes at the hands of law enforcement. . . . I think that any 14-year-old girl in the circumstances that [A.M.] was [in] would have perceived things that way." "She had to act to protect her mother in her belief."

As for the allegation of battery of a school employee, counsel for A.M. argued, A.M.'s "force was reasonable," because A.M. "was simply trying to get around" the school employee to reach her mother.

In April 2019, the juvenile court sustained all four allegations in the petition, explaining that A.M.'s "testimony in the hearing was not credible on several issues." Relevant here, the juvenile court "[did] not find credible [A.M.'s] testimony that she was afraid that her mother was going to be killed by a police officer. There [was] no evidence to support a reasonable belief of defense of others."

The juvenile court explained that it had considered the officer's body camera footage and was "tak[ing] into consideration [A.M.'s] behavior at the time that she was in the school office, the timing of everything in determining credibility." "[A.M.'s] behavior in the [school] office and the language she used, her behavior towards school

5

personnel and the police officer [was] . . . very shocking."  "Her behavior did not change when her mother arrived and, actually, things escalated."

In a June 2019 disposition hearing, the juvenile court placed A.M. on six months court probation.

A.M. timely appealed.

## II.  DISCUSSION

### A.  *Battery Against an Officer*

A.M. argues there was insufficient evidence of battery against the officer. Specifically, A.M. contends there was insufficient evidence to prove beyond a reasonable doubt that she "did not act in lawful defense of another, her mother."  A.M. "acted as any reasonable 15-year-old girl . . . , seized the opportunity to defend her mother against what she perceived to be a very real . . . imminent life-threatening danger."

The People argue the juvenile court's credibility finding (that A.M. was not credible when she testified she was afraid the officer was going to kill her mother) "precludes" A.M.'s claim.

We conclude there was sufficient evidence of battery against the officer.

Section 242 provides:  "A battery is any willful and unlawful use of force or violence upon the person of another."

Section 243, subdivision (b) provides in relevant part:  "When a battery is committed against the person of a peace officer . . . engaged in the performance of his or her duties . . . and the person committing the offense knows or reasonably should know that the victim is a peace officer . . . the battery is punishable by a fine not exceeding two thousand dollars ($2,000), or by imprisonment in a county jail not exceeding one year, or by both that fine and imprisonment."

When using excessive force, a peace officer is not engaged in the performance of his or her duties for purposes of section 243, subdivision (b).  (*People v. Delahoussaye* (1989) 213 Cal.App.3d 1, 7; *People v. White* (1980) 101 Cal.App.3d 161, 167.)

Accordingly, defense of another who is suffering from excessive force by a peace officer is a defense to a charge of battery on that peace officer. (*People v. White, supra*, 101 Cal.App.3d at p. 168.)

CALCRIM No. 3470, containing the elements for self-defense or defense of another, provides that one acted in lawful self-defense or defense of another if: (1) she reasonably believed that she or someone else was in imminent danger of suffering bodily injury; (2) she reasonably believed that the immediate use of force was necessary to defend against that danger; and (3) she used no more force than was reasonably necessary to defend against that danger.

To justify an act of self-defense the belief in the need to commit the act "must both subjectively exist and be objectively reasonable." (*People v. Brady* (2018) 22 Cal.App.5th 1008, 1014.)

On appeal from the juvenile court's adjudications after a contested jurisdictional hearing, " '[t]he test is whether substantial evidence supports the decision, not whether the evidence proves guilt beyond a reasonable doubt.' [Citations.] Our sole function is to determine if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citations.] The standard of review is the same in cases where the prosecution relies primarily on circumstantial evidence." (*In re Arcenio V.* (2006) 141 Cal.App.4th 613, 615-616.)

" 'Evidence of . . . state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support' " sustaining an allegation. (*People v. Rios* (2013) 222 Cal.App.4th 542, 568.)

A trial court's credibility determinations "are subject to extremely deferential review." (See *Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582.)

Here, the juvenile court sustained the allegation of battery on a peace officer after finding not credible A.M.'s testimony that she feared her mother was in imminent danger of choking to death at the officer's hands. In making that credibility finding, the juvenile

7

court considered A.M.'s "very shocking" behavior in the school office, before the parking lot confrontation, wherein A.M. refused to surrender her phone to school staff, called the officer "bitch," and said she was "being defiant because" she was being accused "of shit and [she] already ha[d] anger issues."

We will not disturb that plausible credibility finding, which is consistent with the notion that A.M.'s battery on the officer in the parking lot was a *continuation* of the defiant and antagonistic behavior that A.M. exhibited in the school building before the officer ever tried to handcuff her mother.

And given that credibility finding, substantial evidence supports the juvenile court's ruling that A.M. committed battery on a peace officer, because a subjective belief that her mother *was* in imminent danger of suffering bodily injury is a necessary precondition to any right that A.M. might have had to defend her mother from a perceived excessive use of force.

B.      *Battery Against a School Employee*

A.M. argues there was insufficient evidence of battery against a school employee, when she shoved the employee, because A.M. was "trying to come to the defense of her mother" and not "acting in anger toward" the employee, and not "attempting to harm or injure" the employee. The People argue there was substantial evidence for this battery. We agree with the People.[2]

---

[2] A.M. argues that her behavior "did not warrant a criminal prosecution." A.M. also argues that "[i]n light of recent events of police behavior against citizens for minor infractions or misdemeanor behavior, our society is now calling into question the use of physical restraint by police officers in situations where a citation could have been just as effective in getting the job done rather than escalating the encounter into a violent assault." The wisdom of the decision to pursue battery charges in the petition and the propriety of the officer's use of force are not questions that we must decide to resolve this appeal. Accordingly, we state no opinion on those issues.

8

The trial court's adverse credibility finding resolves this argument. If A.M. did not actually believe that her mother was in imminent danger of suffering bodily injury, then A.M. did not have an arguable right to shove the employee out of the way to reach her mother.

And even if A.M. was not attempting to harm or injure the employee, the record reflects that A.M. *purposefully* shoved her (moments before she threatened to "slap the fuck outta" the employee). Battery requires nothing more. (See *People v. Thornton* (1992) 3 Cal.App.4th 419, 423 ["Battery is committed whenever there is the slightest intentional touching, even though there is no intent to harm, and even though the degree of force used is unlikely to cause harm"].)

### III. DISPOSITION

The judgment is affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

BLEASE, Acting P. J.

/S/

_____

DUARTE, J.

9